## Warren *v.* Town of Booneville.*

(Division A.   Oct. 1, 1928.)

[118 So. 290.   No. 27280.]

*Corpus Juris-Cyc References: Municipal Corporations, 43CJ, p. 967, n. 61; p. 977, n. 53.   Municipal corporation engaged in a corporate rather than governmental function in maintenance of public streets, see 13 R. C. L. 312; 4 R. C. L. Supp. 808.

*Friday & Windham,* for appellant.

*J. A. Cunningham,* for appellee.

McGowen, J. Warren, the appellant, prosecutes this appeal from a judgment of the circuit court sustaining appellee's (town of Booneville) demurrer to the declaration filed by it therein. The declaration is as follows:

"Comes Malachi Warren and claims of the town of Booneville, a municipal corporation, and a subdivision of the state of Mississippi, the sum of ten thousand dollars for injuries done to and wrongs suffered by him, proximately caused by the defendant corporation, its agents, officers, or employees, for that heretofore, on, to-wit, the 15th day of June, 1927, said plaintiff was engaged in serving a sentence for a violation of an ordinance of the town of Booneville, by labor upon defendant's streets and alleys; that on said date the defendant was engaged, by its agents, officers, and employees, in maintaining and improving its streets and alleys, and that in so doing it then and there had, as its employee in charge of said work as superintendent or foreman, one R. B. Moreland, who was then and there in charge of the plaintiff and others engaged in such work for the city as aforesaid. And while engaged in such work, and at such time and place, the said R. B. Moreland, while acting in the line of his duty as an employee of the defendant, and while acting within the scope and authority of his employment, did willfully, wantonly, and in a negligent manner chain and shackle the legs of plaintiff, and forced him to work on the streets thus chained and shackled, for three full days. By reason of which wrongs and injuries, and as a proximate consequence thereof, plain-

tiff has suffered great bodily pain and mental anguish and has been permanently injured in his health; he has suffered great loss of time and incurred great expense; he has permanently and totally lost the use of one of his legs, and constantly suffers great bodily pain and mental anguish; and he has also been deprived of the means of continuing his usual occupation and is utterly unable to earn a livelihood. And he charges and avers that the injuries and damages herein complained of were proximately caused by the wrongful and wanton negligence of the defendant, its agents, officers, and employees engaged and acting as aforesaid. Hence this suit.''

The substance of the appellee's demurrer is that the town of Booneville is not liable, because at the time the injury took place the municipality was acting in its governmental capacity, and the injury was not the result of its action while acting in its corporate capacity. Appellant assigns as error the action of the court in sustaining the demurrer to his declaration.

It will be observed that the gravamen of appellant's cause of action is that he was required to work on appellee's street, guarded as a prisoner, and that appellee's foreman or superintendent required him to so work shackled and chained, and his legs were injured by the fact that he was forced to wear shackles and chain.

Our state is quite fully committed to the doctrine that a municipality, in exercising its statutory duty and prerogative of maintenance and repair of its streets, is exercising a corporate function. *Whitfield* v. *City of Meridian*, 66 Miss. 570, 6 So. 244, 4 L. R. A. 834, 14 Am. St. Rep. 596; *City of Vicksburg* v. *McLain*, 67 Miss. 4, 6 So. 774; *Nesbitt* v. *City of Greenville*, 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521; *Carver* v. *Jackson*, 82 Miss. 583, 35 So. 157; *City of Pascagoula* v. *Kirkwood*, 86 Miss. 630, 38 So. 547; *Pass Christian* v. *Fernandez*, 100 Miss. 76, 56 So. 329, 39 L. R. A. (N. S.) 649; *Hardin* v. *City of Corinth*, 105 Miss. 99, 62 So. 6; *Saxon* v. *Town of Houlka*, 107

Miss. 161, 65 So. 124; *Higginbottom* v. *Village of Burnsville,* 113 Miss. 219, 74 So. 133; *Mayor, etc., of City of Vicksburg* v. *Harralson,* 136 Miss. 872, 101 So. 713, 39 A. L. R. 777; *Atkinson* v. *Town of Decatur,* 131 Miss. 707, 95 So. 689. It will be noted that Warren was a prisoner serving a sentence; that his injury was proximately caused by the wrongful act of the town's agent in the course of his employment.

Counsel for appellant cite 43 C. J. 967, the text of which is as follows:

"*Injury to Convict.*—Where a prisoner sentenced to work on the street, or upon any enterprise corporate in character, is injured by the wrongful act of the municipal agent superintending such work, the municipality is liable although such agent was a police officer having custody of the prisoner."

This is authority for appellant's position, but we find that only one case is cited in the note, to-wit, *Hillman* v. *Anniston,* 214 Ala. 522, 108 So. 539, 46 A. L. R. 89. This decision was rendered by a divided court, and the dissenting opinion seems to us to be the better reasoning and more in accord with the weight of authority in this country. In the main opinion the majority said:

"Looking to the authorities in other states, they are practically of one accord in holding nonliability for negligent injury to prisoners due to defective or insanitary prisons, confinement with drunken, vicious, or infected fellow prisoners, or exposure to cold or fire therein. The same rule applies to workhouses and injuries to prisoners put to work as a penalty for offenses; *such work being incidental to the execution of the sentence.* [Italics ours.] The rule is based upon the general doctrine of immunity for the wrongful acts of officers engaged in public governmental duty. In such case the doctrine of *respondeat superior* is not recognized. 19 R. C. L., p. 1126, section 404, and notes 4, 5, and 6; 6 McQuillin on Corp., section 2642, and notes, pp. 5453 to 5456; 4 Dillon on Mun. Corp.,

section 1656, note, p. 2886; *Nisbet* v. *Atlanta,* 97 Ga. 650, 25 S. E. 173; *Ulrich* v. *St. Louis,* 112 Mo. 138, 20 S. W. 466, 34 Am. St. Rep. 372; *Jackson* v. *Owingsville* (Ky.), 121 S. W. 672, 25 L. R. A. (N. S.) 180, and note.''

We copy literally the court's reasoning:

''The doctrine of immunity in favor of municipal corporations is grounded in public policy. Mr. McQuillin (section 2642) speaks of the injustice of the rule announced as to prisoners in jails and workhouses. We are not inclined to extend it. We can see no basis of justice for holding the municipality liable for the acts of its agents engaged in the construction or operation of public works, or other corporate function, at the suit of a third person free to avoid danger, or an employee who voluntarily engages in the service, and deny the same protection to one put to involuntary labor under like conditions.''

The dissenting opinion, written by GARDNER, J., an concurred in by Judges ANDERSON and SOMERVILLE quotes the general rule as announced in the text (19 R. C. L., section 5404), and then says:

''The foregoing section is cited in the majority opinion with the statement: That the 'rule applies to workhouses and injuries to prisoners put to work as a penalty for offenses; *such work being incidental to the execution of the sentence.*' (Italics supplied.)

''The words 'such work being incidental to the execution of the sentence' constitute the turning point of the question here considered, and leads logically to a contrary conclusion. Had plaintiff's intestate met his death by the wrongful act of the guard while in prison or being guarded at a workhouse, confessedly, under all the decisions, the rule of nonliability of the city would apply. The mere fact, therefore, that he was being worked on the streets, rather than at a workhouse or elsewhere, as a penalty for the offense, was a mere incident, and cannot be of controlling influence here. The mere incident of

the place of work should not be made to operate a destruction of the well-recognized rule of nonliability in cases of this character.

"The only authority cited in the majority opinion which is concededly directly in point (*Nisbet* v. *Atlanta,* 97 Ga. 650, 25 S. E. 173) is also directly opposed to the majority view. I am persuaded it is correct, and supported by the decided weight of authority."

There are some other Alabama cases, which are not directly in point, and the above cited case is appellant's sole reliance for reversal.

The case of *Nisbet* v. *Atlanta,* 97 Ga. 650, 25 S. E. 173, is on all fours with this case, and the facts are as follows:

"Nisbet was consigned to the city stockade for the violation of some city ordinance, and placed in the custody of D. G. Wylie, duly elected, acting, and commissioned by the city as its commissioner of public works. Nisbet was placed under the direct personal orders of Thomas Shivers, a duly authorized agent and street foreman of the city, and while on Loyd street was commanded by Shivers to lift said rock, the only helpers provided being one Greer Strickland and two small boys whose names are unknown, when there should have been four or five more helpers then and there easily obtainable by Shivers. The usual tools and appliances for moving such rocks were in the city's possession and control and easily obtainable, and if furnished to Nisbet and his helper, no injury would have resulted; but Shivers neglected this proper and usual method of using skids or large pieces of wood or plank or crowbars, and forced Nisbet to attempt to lift the rock from the ground to the wagon. The city's agents, Thomas Shivers and David Vining (who guarded Nisbet on the streets and at night), refused to send for a surgeon, and without any medical treatment or surgical attention he was compelled by said agents to work for nine days after his hand was so lacerated by the

rock, by which negligence blood poison was caused in the hand, from which Nisbet died on January 15, 1894.''

In this case Judge LUMPKIN said:

''The question involved in this case has been too often passed upon by this court to require further elaboration. Neither the law of master and servant nor the doctrine of *respondeat superior* applies in a case where a prisoner undergoing punishment for a violation of a municipal ordinance is injured or killed in consequence of the negligence or misconduct of the officer having the custody or control of such prisoner. This is true because, in such matters, the municipal corporation is exercising governmental powers and discharging governmental duties, in the course of which it, of necessity, employs the services of the officer in question.''

This rule is sustained by the case of *Wilson* v. *City of Macon*, 88 Ga. 455, 14 S. E. 710, in which many authorities are cited. The leading case is that of *Patrick Curran* v. *City of Boston*, 151 Mass. 505, 24 N. E. 781, 8 L. R. A. 243, 21 Am. St. Rep. 465, in which the facts were that Curran was convicted of refusing to support his family, and sentenced to imprisonment in the workhouse established by the city on Deer Island. The city maintained gas works on the island for the manufacture of gas for use in and about its various buildings there. Coal was stored upon the wharf, and was carted from the wharf to the gas works. At the time of the accident, and during the time plaintiff was serving his term of imprisonment, he was at work, under the supervision of an officer of the city, carting, loading, and unloading coal, and, through the negligence of the defendant's officer, the coal fell on the plaintiff and injured him. The city had contracted with various persons for the labor of the prisoners in the manufacture of clothing and other articles, from which contracts existing at the time the city derived large profits. The gas made at the works, from the coal which the plaintiff was engaged in carting, was

used in lighting the rooms where the prisoners were engaged in carrying out these contracts. The court below directed a verdict for the defendant. There was an appeal, and the court, after setting forth the statutory authority of the city of Boston to establish workhouses, held that the establishment of the workhouse was for the public service, and for the general good in providing for the care and support of offenders for whose maintenance it was responsible, and held that it was not a private or corporate enterprise, although revenue might be derived from the labor of the inmates, this accident occurred while the city was engaged in a governmental agency.

We might multiply authorities maintaining the general rule set forth in 16 C. J., cited *supra,* but here it is too evident that the city exercises a governmental function in working its prisoners upon the streets; the injury here inflicted was not resultant from any defect in the street, but was from the adjustment of the manacles intended to hold the prisoner safely and prevent his escape while he was engaged in work on the public street.

By section 6781, Hemingway's 1927 Code (section 3345, Code of 1906), the mayor and board of aldermen are authorized to erect and maintain a municipal prison, and regulate the keeping of the same and the prisoners therein, for the separation of the races and sexes, or to make a contract with the county that the county jail be used, or that the streets be worked by municipal prisoners, or to contract with the county for the work on county roads by municipal prisoners, or to contract with the county to work the prisoners on county farm. So it is clear that working a prisoner on a street is in lieu of or in addition to the municipal imprisonment.

We are of opinion that the working of the streets is a mere incident to the carrying out of the imposition of a sentence for crime on one who has violated the law or ordinance of the municipality, and that, if a prisoner is

injured because of the manner of his being held, there would be no difference whether he were at work on the street, or at work in a municipal prison, making shoes or manufacturing cloth, or in the municipal blacksmith shop, engaged in hammering or welding, which latter are clearly and undeniably the exercise of governmental functions as to the prisoner so engaged. There can be no real distinction.

The demurrer was properly sustained.

*Affirmed.*