## SAVAGE v. CITY OF TULSA.

No. 23547.   Oct. 29, 1935.

Bailey E. Bell, W. Cliff Klein, and Gerald B. Klein, for plaintiff in error.

H. O. Bland, City Atty., Bert E. Johnson, O. H. Searcy, C. L. Hamilton, and Edna Claire King, for defendant in error.

PER CURIAM. The plaintiff in error, Savage, files this action against the defendant in error, municipal corporation, city of Tulsa, Okla., and from an adverse ruling sustaining the demurrer of the city of Tulsa to his petition, prosecutes this appeal, assigning as error such ruling and the dismissal of his action with prejudice. The parties will be referred to as they appeared in the lower court.

The plaintiff alleged in substance that he was convicted and placed in the Tulsa city jail to serve out a fine of $10; that thereafter he was advised that if he would work on the streets of Tulsa, he would receive credit on his fine of two days for each day served and shorten his imprisonment; that he consented, and under the control and direction of the officers, agents, and employees of the city of Tulsa, engaged in painting street markers, stop signs, and other street painting; also, maintenance work for such city upon its streets; that at the particular time complained of, plaintiff and other prisoners were engaged in painting the lines from one sidewalk across to the other, across the four streets at a street intersection, and painting the stop signs there, and plaintiff was engaged in the painting of a sign in the middle of the street, and while in a stooped position was struck by an automobile, driven by an unidentified driver, causing plaintiff certain permanent injuries.

He further avers that the city was negligent in failing to provide adequate safeguards or warnings, affording protection or warning approaching motorists of the presence of plaintiff, and that such negligence was the proximate cause of the injury, and prays judgment against the defendant, municipal corporation.

It is the contention of the plaintiff that the city of Tulsa, in employing him in the maintenance of its streets and in the performance of the kind and class of work in which plaintiff was engaged, was in the exercise of its corporate function, and that the law of master and servant or respondeat superior applies. On the other hand, the defendant, city of Tulsa, insists that it was in the performance of its governmental function and not liable for the injuries sustained by the plaintiff on account of the alleged negligence of its officers.

It is well settled that if the petition of the plaintiff discloses a set of facts which would constitute a defense to plaintiff's cause of action, such question may be raised by demurrer.

The powers of a city such as defendant, municipal corporation, have been defined to be of two classes. This distinction or classification was noted in the case of Illinois Trust & Savings Bank v. Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, wherein it was held:

"A city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality."

In the case of Fretz v. City of Edmond, 66 Okla. 262, 168 P. 800, and City of Shawnee v. Roush, 101 Okla. 60, 223 P. 355, this court quoted and approved the rule announced in the above case and has announced a similar rule in a number of decisions. City of Lawton v. Harkins, 34 Okla. 545, 126 P. 727; Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80; Oklahoma City v. Haggard, 170 Okla. 473, 41 P. (2d) 109.

In this state, as in most others, the distinction is made between the liability of a municipal corporation for the acts of its officers in the exercise of powers of a governmental nature, which it possesses for public purposes, which it holds in the exercise of its sovereignty and governs its people, and those acts of it in the exercise of powers, proprietary in their nature and which are exercised, not for the purpose of governing its people, but for the private advantage of the municipality and its inhabitants. Of the former the city is not liable, of the latter it is liable. City of Lawton v. Harkins, supra; City of Shawnee v. Roush, supra; Oklahoma City v. Foster, supra; and Oklahoma City v. Haggard, supra.

The proper application of these rules would determine the question here involved. The petition shows upon its face the corporate character of the defendant, the conviction of plaintiff and his confinement, and the placing of plaintiff on the streets of the city of Tulsa, before his fine was paid or served, and his employment in painting the markers

at a street intersection, with the resulting injury.

Section 3159, O. S. 1931, is as follows:

"Any court, justice of the peace, police court or police magistrate, in cases where such courts have jurisdiction under the laws of this state, or as provided by the ordinances or charter of any incorporated town or city in the state, shall have full power and authority to sentence such convict to hard labor as provided in this article."

Article 2, section 3, paragraph 27, of the charter of the city of Tulsa, provides that the city of Tulsa shall have the power,

"to provide workhouses for vagabonds and disorderly persons, who are unable, or refuse to pay fines, or who have been sentenced to fine and imprisonment, or to compel them to work on the streets, alleys and public works, and make all necessary regulation concerning the same, and to provide, keep and regulate a city prison."

The plaintiff cites a number of cases bearing upon the liability of municipalities, to the effect that a city in maintaining its streets acts in a proprietary or private capacity, and while so acting is generally held liable for the negligence or wrongful acts of its officers in such matter, and reasons that since the kind of work being performed by the plaintiff was such that would be performed in its corporate capacity, it is therefore liable for the negligence of its officers, though police officers, in that such police officer at such time is a servant of the municipality in its corporate capacity.

Plaintiff also cites the case of City of Anniston v. Hillman (Ala.) 126 So. 169. This was the third appeal of this case, the former appeals being reported in 214 Ala. 522, 108 So. 539, 46 A. L. R. 89, and 216 Ala. 661, 114 So. 55. In the first appeal, the court held:

"A municipal corporation is liable for injury to or death of a prisoner sentenced to 'work upon its streets resulting from the wrongful act of its agent in the course of the employment, notwithstanding the person causing the injury was a police officer having the custody of the injured person."

We have found no other case following this rule, and it is noted that in each appeal there is a dissent, the court being divided in each instance, the decision being announced by a bare majority.

In the dissenting opinion of Justice Gardner, reported in 126 So. 173, he announced his view as follows:

"The officer in charge of the deceased prisoner was the city's convict guard, a position he had held many years. The prisoner was sentenced to hard labor upon the city streets. This character of labor of a convict is expressly authorized by section 1936, Code 1923, wherein the recorder is authorized to sentence the prisoner 'to hard labor upon the streets or public works, or in the workhouse or house of correction of the city.' So, whether the convict is to serve hard labor on the streets, or on some public works, or his sentence is to the workhouse of the city, he is in all cases serving the sentence imposed by law, and in the execution of such sentence the city is in the exercise of a governmental function."

"The authorities are all in accord that in the exercise of such governmental power the city is immune from suits of this character. See authorities cited in the note to Hillman v. Anniston, 46 A. L. R. p. 89, et seq. This immunity is time-honored. It is swept away in the instant case merely because the convict was put to work on the streets, rather than in the workhouse, though hard labor upon the streets is designated in the statute along with workhouse. The effect of the decision is to rest the principle of immunity upon the mere act of the recorder in selecting the place of work. If on the streets, liability may be imposed, if in the workhouse, the city is immune therefrom."

This decision seems to stand alone. It was criticized in the case of Warren v. Town of Booneville, 151 Miss. 457, 118 So. 290, wherein the Supreme Court of Mississippi refused to follow the decision. It held:

"We are of the opinion that the working of the streets is a mere incident to the carrying out of the imposition of a sentence for crime on one who has violated the law or ordinance of the municipality, and that, if a prisoner is injured because of the manner of his being held, there would be no difference whether he were at work on the street, or at work in a municipal prison, making shoes or manufacturing cloth, or in the municipal blacksmith shop, engaged in hammering or welding, which latter are clearly and undeniably the exercise of governmental functions as to the prisoner so engaged. There can be no real distinction."

In the case of Nisbet v. City of Atlanta, 97 Ga. 650, 25 S. E. 173, the court held:

"A municipal corporation is not liable in damages for the death of one convicted in a corporation court, and sentenced to work upon the public streets, although his death was occasioned while the convict was engaged in such work, and resulted from negligence on the part of the foreman who had been placed by the municipal authorities in charge thereof, and from the failure of such foreman to provide the convict, after his injury, with the proper medical attention and treatment."

The authorities almost unanimously hold

that, in erecting and maintaining a prison or lockup, a municipal corporation is exercising a purely governmental function, and is therefore not liable to a person imprisoned therein for injuries sustained by reason of its improper construction or negligent maintenance, or for injuries to prisoners resulting from the negligence of the keeper, guard, or policeman in charge of them, for the reason that, in the maintenance of the jail, in the working of convicts, the municipality is exercising governmental powers and discharge of governmental duties. There is a further line of decisions holding a municipal corporation not liable for injuries to a prisoner from the burning of its jail, even though the fire may have been due to the negligence of the officers in charge of the prison, or even though the injuries resulted from the fire were attributable to the negligence of these officers.

It appears to us that the better ru'e and the ru'e controlling in this case is that the defendant, municipal corporation, would not be liable for the acts complained of, in that in employing a prisoner under sentence upon its streets it acted in a governmental capacity for purposes essentially public and in the administration of general laws made to enforce the general policy of the state, and for such reasons should be immune from liability; that the powers exercised were not voluntarily assumed or intended for the private gain or benefit of the locality and its inhabitants, but rather in the enforcement of the general policy of the state permitting and authorizing the working of convicted prisoners upon its streets. The reasoning that the prisoner being worked upon the streets, rather than at a workhouse or elsewhere, as a penalty for the offense was a mere incident, and such incident of the place of work should not be made to operate a destruction of the well-recognized rule of nonliability in cases of this character, seems to be the better rule. Plaintiff came into defendant's hands by virtue of its governmental function; was tried, convicted and sentenced to pay a fine, in default of which he was in prison, by virtue of such function. In the execution of the sentence, plaintiff performed work upon its streets, and such employment in working out his fine being incidental to his punishment, the city was likewise therein acting in its governmental capacity. Jackson v. City of Owingsville (Ky.) 121 S. W. 672, 25 L. R. A. (N. S.) 180; Nisbet v. City of Atlanta, supra; Ulrich v. City of St. Louis, 112 Mo. 138, 20 S. W. 466; Warren v. Town of Booneville, supra.

It may be that the city received some benefit from the labors of plaintiff, but the particular reason and cause for the labor and benefit was the execution and discharge of the sentence, and in such capacity we hold the city to be acting in a governmental capacity.

There is another point made by the defendant, that in installing and maintaining stop signs, it is acting in the performance of a governmental function, occasioned by the right of the defendant to regulate the movement of vehicles and persons upon the street in the interest of public safety, as differentiated from the construction and maintenance of the streets. In view of the decision heretofore announced, no opinion is given upon this point.

Finding no error in the decision of the trial court and the judgment sustaining the demurrer and dismissing plaintiff's petition, the judgment of the trial court is accordingly affirmed.

The Supreme Court acknowledges the aid of Attorneys John Embry, Clyde L. Andrews, and Walter G. Wilson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Embry and approved by Mr. Andrews and Mr. Wilson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.