IDA BALLARD, a widow, v. CITY OF TAMPA, a Municipal Corporation.

168 So. 654.

Division A.

Opinion Filed June 8, 1936.

*Arthur J. Goble* and *Hampton, Bull & Crom,* for Plaintiff in Error;

*Alonzo D. McMullen* and *Ralph A. Marsicano,* for Defendant in Error.

BROWN, J.—The prime question presented in this case, as well stated in plaintiff in error's brief is whether or not a municipal corporation is liable in damages for the death of a convict and prisoner of the municipality, who was working out a court sentence, caused by the negligent or wrongful act of an officer or agent of the municipality while superintending the work of the prisoner in the maintenance and improvement of the streets of the municipality.

The plaintiff in error filed a declaration consisting of three counts against the City of Tampa, Florida, defendant in error, for the death of her husband, while a prisoner of said municipality. The first count alleged that the death of plaintiff's husband, while a prisoner of the City of Tampa, was caused by an assault and battery committed upon his person by a foreman or superintendent of the city, while acting in his line of duty in working plaintiff's husband on the streets of the city. The second count alleged

that a superintendent or foreman of the City of Tampa, who was engaged in maintaining and improving the streets of the city, did force and compel plaintiff's husband, while he was a prisoner of the city, to work upon the streets of the city, over his protest and against his will, while he was in a sick and weakened condition, of which physical condition the defendant had notice, and which resulted in his death. In the third count plaintiff charged that the death of her husband, while he was a prisoner of the City of Tampa, was caused by the negligence of the city in the care and treatment after he had become overheated, while working on the streets of Tampa, and had fallen in a faint and sickened condition.

A demurrer to the declaration was sustained and judgment on the demurrer entered against plaintiff, who took writ of error.

As a general rule a municipality is not liable for injuries to prisoners or convicts resulting from the negligence of the keeper, guard, policeman, or convict boss in charge of them, for the reason that, in the maintenance of a jail and the working of convicts, the municipality is exercising governmental duties, and cannot be held responsible for the negligence or misconduct of officers which it must, of necessity, employ. See 46 A. L. R. 100-101. This general principle is recognized, with a significant qualification in Brown v. Eustis, 92 Fla. 931, 110 S. 873. However, while there is some conflict of authorities, we are of the opinion, and our own cases so hold, that the repair and upkeep of the streets of a municipality is a corporate function, for the abuse of which, by the negligence or wrongful conduct of its agents in the course of their regular employment, the city is liable. See 43 C. J. 974, 977; Key West v. Baldwin, 69 Fla. 136, 67 So. 808; Pensacola v. Jones, 58 Fla. 208,

50 So. 874; Jacksonville v. Drew, 19 Fla. 106; Keggin v.
Hillsborough County, 71 Fla. 356, 71 So. 372; Bryan v.
City of West Palm Beach, 75 Fla. 19, 77 So. 627; Astrom
v. San Antonio, 94 Tex. 523, 62 S. W. 909; Denver v.
Davis, 37 Colo. 370, 6 L. R. A. (N. S.) 1013, 119 Am.
St. Rep. 293, 86 Pac. 1027, 11 Ann. Cas. 187, 20 An. Neg.
Rep. 498; Pass Christian v. Fernandez, 100 Miss. 76, 39 L.
R. A. (N. S.) 649, 56 So. 329; Louisville v. Huns, 167 Ky.
160, 180 S. W. 65; Hillman v. Anniston, 214 Ala. 522, 108
So. 539; 13 R. C. L. 310.   See also, as bearing on this gen-
eral question, Chardkoff Junk Co., 102 Fla. 501, 135 So.
457; Maxwell v. Miami, 87 Fla. 107, 100 So. 147, 100 A.
L. R. 682; Smoak v. City of Tampa, 123 Fla. 716, 167 So.
528; Clearwater v. Gautier, 119 Fla. 476, 161 So. 433.

The question which is presented is whether or not the
City of Tampa was merely continuing to exercise its ex-
clusive governmental function in compelling the prisoner
to work out his sentence by assisting in the maintaining
and cleaning of the streets; or whether, immediately upon
taking him out of confinement as its prisoner, and putting
him to work on the repair or maintaining of its streets,
there was a change, on the part of the city, from the exer-
cise of only its exclusive governmental function to that of
the exercise of its corporate or municipal function, or a
combination of both, so as not to exempt the city from lia-
bility for injuries resulting from negligence.

In Kaufman v. Tallahasse, 84 Fla. 634, 94 So. 697, 30
A. L. R., this Court said:

"A municipality is organized within certain limits of ter-
ritory for local advantage and convenience of the people
in the particular locality.   While it may be a public agency
of the State in some of its activities, it is possessed of local
franchises and rights which pertain to its legal personality

or entity for its quasi-private (as distinguished from public) corporate advantage. See 1 McQuillin, Mun. Cor., 168; Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 373.

"The establishment and maintenance of a fire department may be regarded as a governmental function, that point is not necessary to a decison in this case, but whether the operation of its vehicles and trucks in crowded streets, where due either to carelessness in the handling of the same, or the clumsy character of the vehicle itself, it is a menace to the safety of pedestrians is a wrong or the violation of a duty which the City owes to the people, is another question.

"The distinction between what is a governmental and what a ministerial function of a city is not always so clear that a given transaction may at once be classed as the one or the other, but whether governmental or not, it is always quite difficult, if not impossible, to give a satisfactory reason for holding a city immune from liability when through its own negligence or the carelessness or inefficiency of its agents and employees it violates a right of a citizen to his injury, especially when one considers that provision of the Bill of Rights which declares that "all courts in this State shall be open so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay.'" Constitution, Bill of Rights, Sect. 4.

Thus, this Court recognizes the dual capacity of a municipal corporation.

The courts are not in accord in cases involving the particular facts we have before us in this case. Indeed, the weight of authority is to the effect that such facts create no municipal liability. In Bartlett v. Paducah, 28 Ky. L. Rep. 1174, 91 S. W. 264, it was held that one who is injured by

indignities inflicted upon him by the officials who have him in charge, while working out a fine on the streets of a city for violation of an ordinance, should bring his action against the offending officials, and not against the city.

In Nisbet v. Atlanta, 97 Ga. 650, 25 S. E. 173, the Supreme Court of Georgia held, in a similar case, that the officer having the custody or control of the prisoner was merely discharging the governmental duty of the city, and that therefore the city was not liable for the death of the prisoner while working out his sentence on the streets of the city.

In the case of Hillman v. Anniston, 214 Ala. 522, 108 So. 539, 46 A. L. R. 89, by a four to three decision, the Supreme Court of Alabama held that a municipality was liable for the death of a convict working out a sentence on the streets of the city for the violation of an ordinance, and who, while so doing, was killed as a result of the brutality of a guard in charge. The majority of the court, while recognizing the general rule of non-liability which applies in such cases to workhouses and injuries to prisoners put to work as a penalty for offenses, "such work being incidental to the execution of the sentence," took the view that as the prisoner was working on an enterprise corporate in its character, it would be unjust under such circumstances to deny a recovery because the injured person was a convict, where at the same time a recovery would be allowed for injury to a third person free to avoid such an injury, or an employee who voluntarily engages in such service and who could quit when ordered to do work which he was physically incapacitated to do. However, in the dissenting opinion the court said:

"The words, 'such work being incidental to the execution of the sentence,' constitute the turning point of the question

here considered, and leads logically to a contrary conclusion. Had Plaintiff's intestate met his death by the wrongful act of the guard while in prison or being guarded at a workhouse confessedly, under all the decisions, the rule of non-liability of the city would apply. The mere fact, therefore, that he was being worked on the streets, rather than at a workhouse or elsewhere, as a penalty for the offense, was a mere incident and cannot be of controlling influence here. The mere incident of the place of work should not be made to operate a destruction of the well recognized rule of non-liability in cases of this character."

The case of Warren v. Town of Booneville, 118 So. 290 (Miss.) cited by the defendant in error, held with the dissenting opinion in Hillman v. Anniston, *supra,* saying:

"* * * here it is too evident that the city exercises a governmental function in working its prisoners upon the streets; the injury here inflicted was not resultant from any defect in the street, but was from the adjustment of the manacles intended to hold the prisoner safely and prevent his escape while he was engaged in work on the public street."

The cases meeting the instant case on all fours, with the exception of the Alabama case of Hillman v. Anniston, *supra,* hold that the working of the prisoner on the streets is "incidental to the execution of the sentence." But we are of the opinion that the better reasoning is that, in such a case as this, at least one of the two objectives, if not indeed the main objective and motivating force, is the carrying out of the corporate or local function of maintaining the streets, as distinguished from the governmental function and immunity of prison work, wherein the motivating force is the detention and punishment of the prisoner. In the latter case the municipality, as a general rule, would be clothed with governmental immunity, whereas in the former,

the position is changed and the police officer becomes also a servant of the municipality in a corporate enterprise primarily for the benefit of repairing or maintaining the streets, a corporate function, to which the governmental function of the custody and punishment of the prisoner might be regarded as an incidental or at least a concurrent objective. As bearing on this question, see Rhobibas v. Concord, 70 N. H. 90, 47 Atl. 82, 85 A. S. R. 604, 51 L. R. A. 381; Lund v. Seattle, 99 Wash. 300, 169 Pac. 820.

While the weight of authority in cases based on similar facts is contrary to the above holding—three cases to one, it seems—we are disposed to take our stand with the Supreme Court of Alabama on this question, even though it was a four to three decision. Two subsequent appeals of the same case failed to shake the majority holding, though there was one change in the personnel of the court during that time. See 114 S. 55 and 126 S. 169.

Even in the early days there was a disposition to limit the common law doctrine of governmental immunity from liability, which gave rise to the saying, "The King can do no wrong, but his ministers may." This ancient doctrine of immunity has been greatly pruned and pared down during the past century, especially with regard to municipal corporations, and no court in the land has probably exceeded this Court in participation in that process. At least, that doctrine should not be extended, in the face of Section 4 of our constitutional Declaration of Rights referred to by Mr. Justice ELLIS in the Kaufman case, *supra*.

It might be remarked that our wrongful death statute (Sections 7047-8 C. G. L.) at least in terms applies to "any corporation," and it might be argued, both from the standpoint of natural justice and the strict language of the statute, that even municipal corporations have no right to claim any

sort of immunity from the liability imposed by that statute, when construed in connection with the constitutional provision above referred to. But it is not necessary to consider that argument here.

Reversed and remanded.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.