## 33424. CITY OF ATLANTA *v.* HURLEY.

DECIDED APRIL 18, 1951. REHEARING DENIED MAY 18, 1951.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, John E. Feagin, Henry L. Bowden,* for plaintiff in error.

*K. C. Bradford, E. B. Judge,* contra.

SUTTON, C. J. This was an action by John L. Hurley against the City of Atlanta for damages for personal injuries sustained by the plaintiff as a result of the alleged negligence of the defendant. The plaintiff's petition is quite lengthy, but the substance of the allegations therein, so far as deemed material for a decision of the question here presented, is: That the defend-ant, City of Atlanta, has the authority and does operate a city prison farm where persons convicted of violating the ordinances of said municipality are confined and required to labor, upon failure to pay the fines imposed for such violations. On November 12, 1949, the plaintiff was arrested in the City of Atlanta on a charge of drunkenness, and was tried in the police court and sentenced to pay a fine of $12, or upon failure to pay the fine, to be confined at the city prison farm for 20 days. The defendant was engaged in extending Broad Street in said city, and in doing this work it was necessary to grade, cover and close excavations left where certain buildings had been removed. On November 14, 1949, the plaintiff, with other prisoners, was transferred by the defendant from the prison farm where he was working out his sentence to the Broad Street Extension

Project, and he and other prisoners were directed and ordered by the "boss" of the work-gang, who was an officer or an employee of the defendant, to get down into an excavation 8 or 10 feet deep, where a building had been removed, and while the plaintiff was in the excavation shoveling dirt and rocks, as ordered by the "boss man," the walls of the excavation, composed of brick, rocks and dirt, caved in on the plaintiff, inflicting upon him very serious and permanent injuries; that the "boss-man" of the gang for the defendant was present, directing the work, and the cave-in and collapse of the walls of the excavation was caused by a sinker drill, commonly known as an air hammer, which was being used on the walls by another prisoner near the plaintiff, and under the directions and orders of the "boss-man" of the defendant in charge of the work and the prisoners at that time. Many acts of negligence were alleged against the defendant, such as, failing to inspect and brace the walls and sides of the excavation where the plaintiff was ordered and compelled to work, and where he was injured, and in failing to use reasonable care and diligence in providing a safe place and working facilities where the plaintiff was ordered and compelled to work, and in failing to give the plaintiff any warning of the dangerous condition of the excavation where he was injured, etc. It was alleged that the plaintiff was free from all fault and blame in the premises; and that his movements were controlled and directed by the "boss" or guard having and exercising authority to compel him and other prisoners to obey his orders.

The defendant filed a general demurrer to the petition on the grounds (1) that the petition fails to set out a cause of action; (2) that the petition shows on its face that, at the time the plaintiff claims to have received his injury, the defendant city was in the act of discharging a public duty and exercising a governmental function and supervising the labor on the public works and the labor of municipal prisoners; and (3) that the petition shows on its face that the injuries of the plaintiff are claimed to have occurred through the acts of negligence of fellow servants or fellow workers of the plaintiff, for which negligence the defendant city could not be held accountable.

The demurrer was overruled, and the defendant excepted.

■ The plaintiff was a prisoner, engaged in working out a sentence on a public street in the City of Atlanta when he was injured as alleged. The general rule in this respect is that "A municipal corporation is not liable for injuries to prisoners or convicts resulting from the negligence of the keeper, guard, policeman, or convict boss in charge of them, for the reason that, in the maintenance of a jail and the working of convicts, the municipality is exercising governmental duties, and cannot be held responsible for the negligence or misconduct of officers which it must, of necessity, employ." 46 A.L.R. 100. The case of *Nisbet* v. *City of Atlanta*, 97 *Ga.* 650 (25 S. E. 173), is very similar to the present case, and the ruling there made is applicable to and controlling in the case at bar. The opinion in that case is as follows: "The question involved in this case has been too often passed upon by this court to require further elaboration. Neither the law of master and servant nor the doctrine of *respondeat superior* applies in a case where a prisoner undergoing punishment for a violation of a municipal ordinance is injured or killed in consequence of the negligence or misconduct of the officer having the custody or control of such prisoner. This is true because, in such matters, the municipal corporation is exercising governmental powers and discharging governmental duties, in the course of which it, of necessity, employs the services of the officer in question. See the case of *Wilson* v. *Mayor & Council of Macon*, 88 *Ga.* 455 [14 S. E. 710], which is directly in point, and the authorities there collected; and, also, the opinion of Justice Atkinson in the more recent case of *Love* v. *City of Atlanta*, 95 *Ga.* 129 [22 S. E. 29, 51 Am. St. R. 64], which, in principle is decisive of the case now in hand," and the ruling in the headnote is: "A municipal corporation is not liable in damages for the death of one convicted in a corporation court and sentenced to work upon the public streets, although · his death was occasioned while the convict was engaged in such work, and resulted from negligence on the part of the foreman who had been placed by the municipal authorities in charge thereof, and from the failure of such foreman to provide the convict, after his injury, with the proper medical attention and treatment." It was said in *Gray* v. *Mayor &c. of Griffin*, 111 *Ga.* 361, 363 (36 S. E. 792, 51 L.R.A. 131), "The general rule is

well established, that a municipal corporation is not liable in damages for injuries sustained by reason of the negligent or improper exercise of a purely governmental power. The preservation of the public peace, quiet, good order, etc., of a community is a governmental function. Where the legislative authority of a city passes ordinances for such purposes, it is clearly exercising a governmental power. When, for the purpose of enforcing such ordinances, the city erects and maintains a prison wherein to confine offenders, for the purpose of punishment, or those charged with offenses, for safe-keeping until they can be tried, it is exercising the same power. The enactment of such ordinances and *the provisions made for their enforcement belong to the police power, which is purely governmental in character* [Italics ours.]. . . 'The principle of non-liability rests upon the broad ground that, in the discharge of its purely governmental functions, a corporate body to which has been delegated a portion of the sovereign power, is not liable for torts committed in the discharge of such duties and in the exercise of such powers.' "
Also, see *Doster* v. *City of Atlanta*, 72 *Ga.* 233, *Wilson* v. *Mayor &c. of Macon*, 88 *Ga.* 455 (supra), *Love* v. *City of Atlanta*, 95 *Ga.* 129 (supra), and *Archer* v. *City of Austell*, 68 *Ga. App.* 493, 495 et seq. (23 S. E. 2d, 512). As above stated, the general rule is that a municipality is not liable for injuries to a prisoner received while confined in a prison or while working out a prison sentence, and such rule prevails in this State. However, a different rule has been adopted in some of the other jurisdictions, for instance, Alabama; and the defendant in error cites and relies upon the case of Hillman *v.* City of Anniston, 214 Ala. 522 (108 So. 539, 46 A.L.R. 39), among others, as supporting his position in the present case.

We have read and carefully considered the lengthy and elaborate brief of the defendant in error, but we are of the opinion that this case is controlled by the authorities cited above in this decision, and not by the authorities cited by the defendant in error. Of course, it is well settled law that a municipal corporation in this State is liable for neglecting to perform or for improper or unskilled performance of its ministerial duties. But the present case comes within the rule that a municipal corporation in this State is not liable for damages to one who is injured

while the municipality is engaged in the performance of a governmental duty.

■ The plaintiff's petition was subject to the defendant's general demurrer, and the trial judge erred in overruling the demurrer.

Pursuant to the act of 1945 (Ga. L. 1945, p. 232; Code, Ann. Supp., § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed. MacIntyre, P.J., Gardner and Worrill, JJ., concur. Townsend, J., concurs specially. Felton, J., dissents.*

WORRILL, J., concurring. I concur in the majority opinion and think it is correct under the authorities therein cited, and this court is bound thereby, but I am also of the opinion that the rule or principle of law fixed by the Supreme Court in this respect should be changed or modified.

TOWNSEND, J., concurring specially: This opinion is based on the theory that the keeping of prisoners by a city is a governmental function and that since cities are not liable for the negligence of their officers, agents and servants while engaged in a governmental function there can be no recovery. Cited in support of it are *Doster* v. *City of Atlanta,* 72 *Ga.* 233; *Wilson* v. *Mayor &c. of Macon,* 88 *Ga.* 455; *Love* v. *City of Atlanta,* 95 *Ga.* 129; *Nisbet* v. *City of Atlanta,* 97 *Ga.* 650; *Gray* v. *Mayor &c. of Griffin,* 111 *Ga.* 361, and *Archer* v. *City of Austell,* 68 *Ga. App.* 493. Were it not for the holdings of our Supreme Court in *Nisbet* v. *City of Atlanta,* supra, this court might have affirmed this case and thereby held that a recovery could be had. Certainly, were it not for the *Nisbet* case, the writer would have dissented because it is the only case that is sufficiently in point with the instant case to require the writer to concur. The *Doster* case is not in point because it was brought by a prisoner who while working on "public works" was beaten by fellow prisoners who were "initiating" him in the presence of the guards. However reprehensible this conduct may have been, it grew out of the governmental function of keeping the prisoners. The same is true as to the *Wilson* case where the plaintiff was confined in a jail cell with a drunken prisoner of powerful physique

who beat him unmercifully. Also, the *Gray* case was an action by a prisoner on account of physical injury and mental suffering caused by the condition of the jail in which the prisoner was kept and the *Archer* case where a prisoner lost his life by reason of being confined in a municipal jail with no ventilation and a smoking stove fire resulted in smothering him. All these cases disclose an inhumane and lackadaisical attitude on the part of prison authorities toward prisoners. Although this condition may have improved somewhat in this century, this type of case, together with like instances constantly being brought to the attention of the public, discloses that there yet remains room for improvement in the administration of penal institutions of our cities, counties and State. Our age has repudiated the medieval theory that prisons are instruments of suffering and torture, but has not always implemented this repudiation with the vigor necessary to put an end to the abuses.

The writer feels that the law should recognize an exception to the rule that cities are not liable for governmental functions in cases where the keepers of prisoners display an unchristian inhumanity toward those whom society has placed in their keeping for rehabilitation. The writer also feels that in the interest of justice and humanity an exception should be recognized by the law so that the States may be held liable for the brutal conduct of those in charge of prisoners on its behalf as well as their culpable neglect. Prisoners are wards of the State and are held, not only for punishment, but for rehabilitation as well. They are wholly dependent for their safety and physical welfare upon their keepers. Those same persons who are shocked by an account of the ill treatment of a caged animal in a zoo may be unmoved by the death of a human being due to the gross negligence of those to whom the power of the law has consigned him.

However, the writer recognizes that this court cannot make law but must construe and apply those laws already in existence. It follows therefore that where a city is engaged in a governmental function there can be no recovery on behalf of a person injured or killed through the negligence of its officers, agents, and servants. *Love* v. *City of Atlanta,* supra, was brought by a private citizen who was not a prisoner, and is only cited in the opinion of the court for the purpose of showing that injuries

to a person inflicted by a runaway garbage cart were not compensable because the collection of garbage was a governmental act, it having been done under the direction of the Board of Health which was a governmental agency. This brings us to *Nisbet* v. *City of Atlanta,* supra, which the writer feels is conclusive authority that the action cannot be maintained. The widow of Nisbet, a prisoner, brought an action alleging that her husband was injured while working on the streets of the city, a ministerial function; that this injury together with total lack of medical attention thereafter brought about his wrongful death for which she sues. Had the *Nisbet* decision been predicated solely upon the failure to give medical attention it would not be binding on this court in this case, as the treatment of the prisoner in this respect would be a governmental function. It was, however, also brought on the theory of negligence in the manner in which he was injured while engaged in a ministerial function.

The instant case is predicated on the theory that the plaintiff was a prisoner engaged in working on a street, which is a ministerial function. He was required to go under a bank above which other prisoners were working. This caused the bank to cave in, resulting in most severe injuries. Had he been a free man and been told to go under this bank, upon seeing the danger he could have refused to do so and thus not assumed the risk. But as a prisoner he had no freedom of choice in the matter and had he refused to obey the command of the supervisor the penalty of such disobedience, while it might not have been greater than the penalty he suffered by obeying, would certainly have been more inevitable. The bank might not have fallen, but mutiny would have brought certain reprisal. Therefore, he had no alternative. The law, having deprived the prisoner of his power of volition in this respect and assumed to exercise it for him, should by every dictate of justice not be allowed with impunity to force additional injury upon him through the gross negligence of its servants.

The city at the time of the injury to the plaintiff was, as to him, engaged in two functions, one governmental, that of keeping prisoners and administering penal affairs, and the other ministerial, that of building streets. Were it not for the *Nisbet* case

this court could if it would follow the more humane views of our neighboring States of Alabama and Florida and recognize the right of the plaintiff to recover on the theory that the city at the time of his injury was engaged in a ministerial function.

Social reforms and our increased understanding of social problems in the past century have brought a gradual trend toward a more humanitarian and even-handed administration of justice in the field of penal law. In view of this, the writer feels that the *Nisbet* case should be modified to the extent that a plaintiff with a cause of action such as is here set out should be entitled to his day in court, and to recovery if he is able to prove the allegations of his petition. Since this court is bound by the ruling in the *Nisbet* case and is without power to modify it, the writer concurs in the judgment, but feels that the question is one of moment and importance, and public concern, and that the result reached is inequitable.

FELTON, J., dissenting. I am of the opinion that there is no authoritative Georgia decision on the principal question involved, dealt with by the majority, and that the action will lie. I do not think it can be successfully urged that the work being done by the City of Atlanta on the streets and sidewalks was a purely governmental function and would be so considered if the question of working a prisoner was not involved. The combination of the two functions, governmental and ministerial, causes the difficulty in this case. I do not think the case of *Nisbet* v. *City of Atlanta*, supra, is controlling. One reason is that the dual capacity phase is not mentioned. This fact leads me to believe that the court considered that the inattention to the prisoner was the proximate cause of the death and not the injury upon the streets. It will be noted that that was a death case and not one for personal injuries. Another reason why I think the *Nisbet* case was considered by the judge deciding it as a confinement in jail case is that the court cited *Wilson* v. *Mayor &c. of Macon*, 88 *Ga.* 455, and stated that it was directly in point. The *Wilson* case holds that a municipal corporation is not liable for personal injuries sustained by one prisoner at the hands of another confined in the same cell. It would seem also that the court in *Gray* v. *Griffin*, 111 *Ga.* 361 regarded the *Nisbet* case as a confinement in jail case and did not regard it

as one involving two functions of a municipality, as this case does. The answer to the question whether the instant action will lie rests in the answer to the question as to which function was dominant and which subordinate, secondary and incidental. In my opinion, the ministerial function was dominant and the governmental function of working the prisoner was incidental. In the first place the city would have done the work if it had had no prisoners to help do it. In the next place I think we would have to hold that the governmental function was incidental if some other citizen, one not in prison, and not working on the job, had been injured by what a prisoner on the job had done or neglected to do under circumstances where the city would be liable if a free agent had caused the injury rather than a prisoner. I do not think that any court would hold the city immune from suit in such a case on the ground that when the prisoner committed the negligent act or omission, the city was engaged in a purely governmental function. There are but few cases involving this precise point. Alabama follows the reasoning set forth above and even goes to the extent of allowing recovery for an assault by a guard on a prisoner in the course of the work. Hillman v. City of Anniston, 214 Ala. 522 (108 So. 539, 46 A. L. R. 89). See also the same case in 220 Ala. 505 (126 So. 169), and 216 Ala. 661 (114 So. 55). The Florida Supreme Court followed Alabama in Ballard v. City of Tampa, 124 Fla. 457 (168 So. 654). To the contrary are Warren v. Town of Booneville, 151 Miss. 457 (118 So. 290), and Savage v. City of Tulsa, 174 Okla. 416 (50 Pac. 712). In some cases the doctrine of governmental immunity is indispensable. In many cases our courts have extended the doctrine beyond reason and often contrary to precedent. "The modern tendency is to restrict rather than extend the doctrine of municipal immunity." 38 Am. Jur. 266-7, § 573. A majority of cases seem to hold that where the two functions are combined, it is impracticable to separate them and that the rule as to private activities (or ministerial functions) must be followed. 38 Am. Jur. 305, § 608.