**Farrie DANCER, Petitioner,**

v.

**CITY OF HOUSTON, Respondent.**

No. A–10176.

Supreme Court of Texas.

Nov. 25, 1964.

Tynes & Turk and Paul D. Filer, Jr., Houston, for petitioner.

R. H. Burks, City Atty., Houston, G. Gordon Whitman and Homer T. Bouldin, Asst. City Attys., for respondent.

NORVELL, Justice.

Farrie Dancer recovered a judgment for $1500.00 against the City of Houston in the District Court. The Court of Civil Appeals reversed and rendered judgment that Dancer take nothing. 377 S.W.2d 858. We reverse the judgment of the Court of Civil Appeals and remand the cause to said Court for its consideration of the points of error contained in the brief of the prevailing party therein which are within the exclusive jurisdiction of the Court of Civil Appeals. James P. Hart, "Appellate Jurisdiction of the Supreme Court", Appellate Procedure in Texas § 20.2.

The following statement is taken from the trial court's findings of fact and conclusions of law.

Farrie Dancer was convicted of a traffic violation in one of the corporation courts of Houston, Texas. He was fined twenty dollars and upon his failure to pay such sum, he was imprisoned and transferred to the Municipal Prison Farm to work out his fine at the rate of three dollars per day.[1]

On September 26, 1961, Dancer was transported along with fifty other prisoners to the various public parks of the City of Houston for the purpose of cleaning up the debris in such parks caused by Hurri-

1. The trial court found that at the time Dancer was injured, his fine had actually been paid to the City by some third person. However, no point or counter- point based upon this circumstance was contained in the briefs filed in this Court or in the Court of Civil Appeals.

cane Carla. Upon arriving at the John T. Mason Park, Dancer, along with the other prisoners, was ordered to leave the City owned bus and proceed with cleaning operations in the park. There was an axe lying in the aisle of the bus and in passing toward the exit, Dancer stepped on this axe and sustained injury to his right foot.

The trial court found that the City was negligent in failing to provide a safe place to store the tools used in the clean-up operations and in failing to properly inspect the aisleway of the bus; that such failures constituted negligence which were proximate causes of Dancer's injuries. The trial court concluded that the City of Houston was engaged in a proprietary function as distinguished from a governmental function at the time Dancer sustained his injury and accordingly the City was liable to Dancer in damages.

The Court of Civil Appeals held that the City of Houston in transporting prisoners from the penal farm to the public park was acting in a sovereign and governmental capacity and hence was not liable for the damages sustained by Dancer occasioned by negligence.

▌ The appellate court pointed out that no controlling Texas case had been cited or discovered but reasoned by analogy from the cases of Stinnett v. City of Sherman, Tex.Civ.App., 43 S.W. 847, no wr. hist. (1897), and Valdez v. Amaya, Tex.Civ. App., 327 S.W.2d 708, no wr. hist. (1959) that the activity in which the City was engaged when Dancer was injured was governmental in nature. In *Stinnett,* it appears that the plaintiff was injured by a fellow prisoner, said to be demented, while incarcerated in the city jail. See also, Strickland v. City of Odessa, Tex.Civ.App., 268 S.W.2d 722, no wr. hist. (1954), a similar case. In *Valdez* it was held that the City of San Diego could not be held liable under the doctrine of respondeat superior for the alleged negligence of its City Marshal in failing to furnish a prisoner with immediate emergency medical treatment at the time he was placed in the city jail. In none of these cases was a prisoner being used to do manual labor in connection with the maintaining of a public park and this circumstance was recognized by the Court of Civil Appeals. Under the decisions of this state, the establishment and maintenance of a public park is a municipal proprietary function. City of Waco v. Branch,. 117 Tex. 394, 5 S.W.2d 498 (1928); City of Fort Worth v. Wiggins, Tex.Com.App.,. 5 S.W.2d 761 (1928); Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W.2d 1035, 114 S.W.2d 853 (1938); Claitor v. City of Comanche, Tex.Civ.App., 271 S.W.2d 465,. no wr. hist. (1954).

In Hillman v. City of Anniston, 214 Ala. 522, 108 So. 539, 46 A.L.R. 89 (1926), the Supreme Court of Alabama in a four to three decision recognized an exception to the rule of nonliability for injuries to prisoners when it appeared that the City was using the prisoner in furtherance of a proprietary function. W. A. Hillman, a prisoner, suffered injuries from which he died while he was engaged in repairing the City's streets. The majority of the Alabama court held that the complaint stated a cause of action against the City for wrongful death, despite the contention that the City at the time Hillman's death occurred was exercising a governmental function, "in working convicts repairing a street or public highway in said city."

The issue drawn in the Hillman case is similar to that involved here and for that reason we quote from both the majority and minority opinions.

The majority stated that:

"The doctrine of immunity in favor of municipal corporations is grounded in public policy. Mr. McQuillan, § 2642, speaks of the injustice of the rule announced as to prisoners in jails and workhouses. We are not inclined to extend it. We can see no basis of justice for holding the municipality liable for the acts of its agents engaged in the construction or operation of public

works, or other corporate function, at the suit of a third person free to avoid danger, or an employee who voluntarily engages in the service and deny the same protection to one put to involuntary labor under like conditions.

"We therefore hold that, where the prisoner is sentenced to work upon an enterprise defined by our law as corporate in character, the municipality is liable for injury or death proximately resulting from the wrongful act of its agent in the course of such employment; that, if injury results from the negligence or wrongful act of the superintendent of the work, and the prisoner's employment therein, the municipality is not exempt because such corporate agent was also a police officer having custody of the prisoner."

In the dissent it was said that:

"Had plaintiff's intestate met his death by the wrongful act of the guard while in prison or being guarded at a workhouse, confessedly, under all the decisions, the rule of nonliability of the city would apply. The mere fact, therefore, that he was being worked on the streets, rather than at a workhouse or elsewhere, as a penalty for the offense, was a mere incident, and cannot be of controlling influence here. The mere incident of the place of work should not be made to operate a destruction of the well-recognized rule of nonliability in cases of this character."

2. In Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A.L.R.2d 1193 (1957), the Supreme Court of Florida receded from a number of its prior decisions and held that a municipality could be held liable in damages for the action of a police officer in leaving a prisoner in an unguarded jail with the result that he was unprotected against fire and was suffocated. This case goes far beyond the rule of Hillman v. Anniston and Ballard v. City of Tampa.

As relating to the repudiation of the doctrine of governmental immunity for

In 1936, the Supreme Court of Florida followed the decision of the Alabama court in Hillman v. Anniston. In Ballard v. City of Tampa, 124 Fla. 457, 168 So. 654 (1936), the Florida court, while recognizing that the weight of authority at that time was to the contrary, stated that "we are disposed to take our stand with the Supreme Court of Alabama on this question, even though it was a four to three decision." [2]

While it appears from the reports of the Hillman and Ballard cases that the prisoners involved in both cases were assaulted by guards who were in charge of the prisoners while they were working upon the public streets, it was not shown that such assaults resulted from escape attempts or some action taken by the guards to preserve and control custody of the prisoners. Both cases involved the legal sufficiency of petitions or complaints and, as could be expected, there were no facts alleged which could justify the assaults complained of.

The case of Reierson v. City of Minneapolis, 264 Minn. 153, 118 N.W.2d 223 (1962) is more in point upon the facts than either *Hillman* or *Ballard* in that negligence rather than an assault by a guard was involved. It was contended that the City of Minneapolis breached a duty it owed to a workman who was a municipal prisoner in that it failed to properly instruct the prisoner as to the use of a machine called an edger which lacked safety devices or guards of any nature. This edger was part of the equipment in a municipally owned sawmill

torts, see Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469 (1959); Muskopf v. Corning Hospital Dist., 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961); Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962); Spanel v. Mounds View School Dist., 264 Minn. 279, 118 N.W.2d 795 (1962) and Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963).

in which the labor of those convicted of municipal offenses was employed.

The City moved for summary judgment in the case. The trial court overruled the motion, but in accordance with the Minneapolis practice certified the controlling question to the Supreme Court as being important and doubtful. In affirming, the Supreme Court of Minnesota said:

"In making our determination, we should recognize a distinction between the status of the plaintiff as a prisoner and his status as a workman employed in a business enterprise conducted by the municipality. It should readily be conceded that the incarceration of law violators is for the common good; that the maintenance of a workhouse is a governmental function; and that the municipality is not liable for injuries occurring to a prisoner as a result of activities which are reasonably related to the execution of his sentence. On the other hand, it should be admitted that the operation of a sawmill which produces a manufactured product for sale involves an element of special corporate benefit which characterizes it as a proprietary activity. * * * We are therefore of the opinion that, where the municipality undertakes in the operation of its workhouse to use the labor of a prisoner in a competitive business enterprise, it should be held to the same standards of responsibility and required to exercise the same degree of care for the safety of such person as is required of others who engaged in a like private enterprise. We accordingly hold that the complaint states a valid claim for relief and that the order of the trial court should be affirmed."

In our opinion the Alabama, Florida and Minnesota cases indicate the rule which should be followed in this case. A sound distinction between the Minnesota case discussed and the one now before us cannot

be based upon the circumstance that the operation of a municipal sawmill was involved in one and the maintenance of a public park is involved in the other. Both activities are clearly proprietary in nature.

In the present case it can be said that the City was exercising both proprietary and governmental functions at the time Dancer was injured. Undoubtedly a guard in maintaining custody and control over prisoners is exercising a governmental function. However, one giving direction as to the activities incident to cleaning up the debris in the public park is in essence acting as a supervisor or foreman and in a nongovernmental capacity. There is no intimation here that Dancer was injured as a result of a city police officer's exercise of a power designed to maintain custody or control over his person. The transfer of the prisoners to the park and the presence of the axe in the bus were in furtherance of the design to clear the park of the debris deposited by the hurricane.

As pointed out by the Court of Civil Appeals there seems to be no decision of this Court which controls the case now before us and we must rely upon analogy in arriving at a decision. In the case of San Antonio & Aransas Pass Ry. Co. v. Gonzales, 31 Tex.Civ.App. 321, 72 S.W. 213, wr. ref. (1903) it appears that Gonzales was a member of a convict gang working for the railway company under a contract with the state. He was injured when struck on the head by a bent brake rod which extended over the platform where he was working. Gonzales and the other convicts were under the control of a sergeant in the employ of the State of Texas. This sergeant, however, occupied a dual position in that he was also employed by the railway company as an assistant section foreman in working the gang of convicts. At the time of his injury Gonzales was engaged in placing a sack of peas, furnished as rations by the State, upon a flat car of a passing train as directed by the sergeant in charge. In hold-

ing the railway company liable for negligence, the Court said:

"Though a convict may be acting under the orders and instructions of an officer placed over him by the state, if while so acting he is injured by the negligence of a railway company, he is entitled to recover from it such damages as flow from the injuries inflicted by such negligence. It was the negligence of the appellant, and not appellee's obedience or disobedience to the order of the sergeant, that caused him to be knocked down and run over by the wheels of appellant's train."

When Dancer was employed by the City to perform labor incidental to the proprietary activities of the City, he occupied much the same position as did Gonzales when his services were contracted for in an agreement between the State and the railway company. Actually Dancer was a workman engaged in removing debris and trash from a city park. The fact that he was also a prisoner working out a fine for a traffic violation should not absolve the City from the duty of exercising ordinary care to protect him from injury. The injury which is the basis of this cause arose out of his activities as a workman and not out of the circumstance that he was a prisoner.

We would affirm the judgment of the trial court except that certain points contained in the City's brief in the Court of Civil Appeals are beyond the jurisdiction of this Court. Article 5, §§ 3 and 6, Texas Constitution, Vernon's Ann.St.

In our opinion Dancer's notice of claim filed with the City was in substantial compliance with Section 11 of the City's Charter. The notice of claim given was not misleading and gave the City full opportunity to investigate the circumstance out of which the claim arose. The evidence was sufficient in law to raise fact issues for the trial judge's determination. The points asserting that there is no evidence to support the trial court's finding are without merit.

The evidence does not raise the issue of voluntary exposure to risk. We overrule Points of Error Nos. One, Two, Three, Five and Six contained in the City's brief filed in the Court of Civil Appeals.

Points Nos. Four, Seven and Eight contained in said brief raise fact questions. They assert that the evidence is insufficient to support the trial court's findings of negligence, proximate cause and damages and that the award of damages is excessive as to amount. Such points are for the Court of Civil Appeals.

The judgment of the Court of Civil Appeals is reversed and the cause remanded to that Court for consideration of said Points Nos. Four, Seven and Eight.