H. R. KAUFMAN, *Plaintiff in Error*, v. THE CITY OF TALLAHASSEE, *Defendant in Error*.

Opinion Filed December 1, 1922.

Petition for rehearing denied January 10, 1923.

1. A municipality may be a public agency of the state but in some of its activities it is possessed of local franchises and rights which pertain to it as a legal personality or entirety for its quasi-private corporate advantage.

2.  The plan of municipal government known as Commission
    Manager or City Manager Plan rests upon the idea that a
    city is merely a large quasi-public corporation whose activi-
    ties partake more of the nature of a business than a govern-
    ment.

3.  The maintenance and operation by a city, under the commis-
    sion form of government, of a fire truck which is so con-
    structed and set up, or so carelessly and negligently operated
    that when taken upon the streets is a menace to the safety of
    pedestrians upon the sidewalks near corners of streets around
    which the truck and apparatus may be driven, is a violation
    of duty which the city owes to pedestrians upon the streets
    and it is liable in damages for any injury inflicted upon such
    pedestrians by reason of the careless and negligent handling
    by the city employees of such truck and apparatus.

A Writ of Error to the Circuit Court for Leon County;
E. C. Love, Judge.

Order reversed.

*W. C. Hodges* and *Fred H. Davis,* for Plaintiff in Error;

*Myers & Myers,* for Defendant in Error.

ELLIS, J.—H. R. Kaufman, on the 26th day of April,
1919, while walking along the sidewalk on Monroe Street
near Jefferson Street was knocked down and severely
bruised by a cart and its appurtenances, called a trailer,
which was attached to one of the fire trucks owned and
operated by the City. The trailer was so constructed and
attached to the fire truck that when the operator of the two
vehicles turned a corner the trailer with its apparatus
would sweep over and across the adjacent sidewalks sub-
jecting pedestrians who were near the corner upon the side-
walk to the danger of being struck and injured thereby.

Kaufman brought an action against the City to recover damages for his injuries and alleged that the City knew of the dangerous character of the device, but unlawfully, wilfully and knowingly permitted it to exist and failed and refused to abate the nuisance. It was alleged that the trailer with its appurtenances attached in the manner stated to a fire truck was kept by the City as a part of its fire fighting apparatus. It is not alleged that the injury was committed while the vehicles were out upon the street in response to a call to a fire.

A demurrer to the declaration was sustained and judgment entered upon the demurrer against the plaintiff, who took a writ of error.

The declaration alleges a state of facts which, if true, amounts to a nuisance wilfully permitted by the City authorities to exist and which was maintained and operated by them although it was a menace to citizens and others who happened to be on street corners in proximity to the passing vehicle, and as a result of the maintenance of such nuisance the plaintiff was injured.

The defense is that as the vehicle is part of the fire fighting apparatus of the City its use and operation is a governmental function for which the City cannot be held liable in case injury results to a person on the side walk where he may have a right to be, that is for the tort alleged in the declaration.

The government of the City of Tallahassee is of that character known as the "Commission Manager Plan" or "City Manager Plan." It was created by Chapter 8374 Laws of Florida, 1919, and ratified by a vote of the electors of the City.

The commission form of municipal government, while it

is generally held by the courts to be valid, is said to be founded upon the idea that the administration of the affairs of a great city is more nearly analogous to the conduct of a business than to the government of a sovereign state. That the necessity for some such method for administering the affairs of a city grew out of the obvious wastefulness and corruption of the aldermanic system of divided responsibility. See 19 R. C. L. 746; 1 Clute Modern Municipal Charters, p. 1.

It is unnecessary to discuss the question of whether a municipality is a political agency or subdivision of the State and in its activities acts always in a governmental capacity. While the drift of judicial thought, as tested by many decisions, seems to be toward the opinion that a city has no inherent right to local self government and is a mere agency of the state to be governed and controlled by the legislature even through its own agents or appointees, and that view finds some color in the language of our constitution, which provides in, Section 8 of Article VIII that the ''Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter or amend the same at any time,'' this court has consistently adhered to the doctrine of municipal liberty in the administration of local affairs.

A municipality is organized within certain limits of territory for local advantage and convenience of the people in the particular locality. While it may be a public agency of the state in some of its activities it is possessed of local franchises and rights which pertain to it as a legal personality or entity for its quasi-private (as distinguished from public) corporate advantage. See 1 McQuillin on Municipal Corporations, 168; Keggin v. Hillsborough County, 71 Fla. 356, 71 South. Rep. 372.

The establishment and maintenance of a fire department may be regarded as a governmental function, that point is not necessary to a decision in this case, but whether the operation of its vehicles and trucks in crowded streets, where due either to carelessness in the handling of the same, or the clumsy character of the vehicle itself, it is a menace to the safety of pedestrians is a wrong or the violation of a duty which the City owes to the people, is another question.

The distinction between what is a governmental and what a ministerial function of a city is not always so clear that a given transaction may at once be classed as the one or the other, but whether governmental or not it is always quite difficult, if not impossible, to give a satisfactory reason for holding a city immune from liability when through its own negligence or the carelessness or inefficiency of its agents and employees it violates a right of a citizen to his injury, especially when one considers that provision of the bill of rights which declares that "all courts in this state shall be open so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and rights and justice shall be administered without sale, denial or delay." Constitution, Bill of Rights, Sect. 4.

The growth of municipal governments to the degree of perfection claimed by those who favor the commission plan is upon the theory that a city's functions have become more and more ministerial in that its duties consist largely, if not entirely, in the management of public utilities such as water works and sewerage systems, electric lighting and power plants, gas plants, telephones and street railways, all properties not of the State but of the people of the community or city, which are managed for the financial

advantage and profit of. the city. Courts upholding the constitutionality of such plans of municipal government do so upon the ground that the constitutional division of the powers of government into three departments and forbidding persons belonging to or performing the functions of one department from exercising any powers appertaining to either of the others, does not apply to municipal corporations. See 1 Clute Modern Municipal Charters 224.

It requires very little stretching of this doctrine to say: therefore no municipal function is governmental, a city is not a political subdivision of the state, not a government but purely a business, commercial, proprietary management of local public interests.

If there was any doubt as to the city's liability for the injury, as set out in the declaration on the ground set up in the demurrer, it should be resolved against the city in view of the modern thought as expressed in the commission plan that a city is merely a large quasi-public corporation whose activities partake more of the nature of a business than a government. See Fowler, Admrx. v. City of Cleveland, 100 Ohio 158, 126 N. E. Rep. 72, 9 A. L. R. 131.

The order sustaining the demurrer is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J.. concur.