CHARDKOFF JUNK COMPANY, a Corporation, *Plaintiff in Error*, vs. CITY OF TAMPA, a Municipal Corporation, *Defendant in Error*.

135 So. 457.

Division A.

Opinion filed July 21, 1931.

502

*Campbell & McLean,* for Plaintiff in Error;

*Karl E. Whitaker* and *H. Lane Coachman,* for Defendant in Error.

BUFORD, C.J.—Plaintiff in error was plaintiff in the court below and filed against the defendant in error. Its amended declaration was in four counts. The first count of the amended declaration was as follows:

(1) "Plaintiff alleges that on the........day of November, 1929, it owned and operated a certain warehouse located on Maryland and Ruby Street in the City of Tampa, Hillsborough County, Florida, which contained certain merchandise a list of which together with its value is hereto attached as exhibit "A", and made a part hereof as if fully set out herein.

(2) That the defendant on the........day of November, 1929, was in possession of, and had under its control and was then operating in a section in which there were located many frame houses covered by inflammable materials, a certain incinerator for the purpose of burning and consuming the refuse of said City, on First and Maryland Avenue in the City of Tampa, Hillsborough County, Florida; that in the operation of said incinerator materials were placed therein which under the generation of heat were artificially forced from the bottom and out of the top or smokestack of the incinerator by means of the draft created; that when the incinerator was in operation burning coals, soot, cinders, sparks, pieces of paper, embers and burning substances were carried and thrown out of the top or smokestack of said incinerator into the air, and carried, when the wind was blowing from a northerly direction over to and upon the premises of the plaintiff as the defendant well knew or could have known

by the exercise of reasonable diligence; that the smokestack to the said incinerator, being located eighty yards from the plaintiff's warehouse, and was not built with sufficient height or capacity nor properly screened with spark arresters; thereby causing and permitting burning coals, soot, cinders, sparks, pieces of paper, embers and burning substances to be emitted from the top or smokestack of said incinerator, and by said wind carried over to and upon the aforesaid premises and warehouse of the plaintiff which was thereby set on fire and completely destroyed together with its contents.

(3) Wherefore, plaintiff sues and claims damages of the defendant in the sum of $20,000.00.''

The second count of the amended declaration was like the first count except that in lieu of the words, ''that the smokestack to the said incinerator being located eighty yards from the plaintiff's warehouse, and was not built with sufficient height or capacity nor properly screened with spark arresters, thereby causing and permitting burning coals, soot, cinders, sparks, pieces of paper, embers and burning substances to be emitted from the top or smokestack of said incinerator, and by said wind carried over to and upon the aforesaid premises and warehouse of the plaintiff which was thereby set on fire and completely destroyed together with its contents,'' of the first count, the following language was used in the second count: ''That the defendant in the operation and use of the furnaces and smokestack of said incinerator was negligent in that more fuel and materials was placed in said incinerator than the said incinerator could consume and properly burn and as a result thereof burning coals, soot, cinders, sparks, pieces of paper, embers and burning substances from the smokestack of said incinerator to the premises and warehouse of the plaintiff, thereby burning and destroying same.''

The third count was like the first count except that it by apt words charged that the operation of the incinerator

in the manner in which it was operated constituted a menace to the public and a nuisance.

The fourth count was like the second count except that it alleged that the use and operation of the incinerator in the manner alleged constituted a menace to the public and a nuisance.

There was attached to the amended declaration a bill of particulars showing the items alleged to have been lost, together with the value thereof.

There was a motion for compulsory amendment to the amended declaration. The motion sought to require the plaintiff to amend each count of his declaration to show more definitely in what respect the defendant was negligent or failed to do its duty in the construction or the maintenance of the incinerator or any part thereof. With the motion for compulsory amendment there was filed a demurrer to the amended declaration. The demurrer presented the following questions:

(a) Is the operation of an incinerator by a city within its corporate limits an exclusive governmental function in the conduct and operation of which the city cannot be held to create a nuisance?

(b) Is the City of Tampa liable for injuries caused by the negligent operation of an incinerator when it is not alleged that in so doing it maintains a nuisance?

(c) Is the notice to the city attorney a prerequisite for filing a suit against the City of Tampa for damages caused by the negligent operation of an incinerator?

Motion for compulsory amendment was denied and demurrer was sustained to each count of the declaration. By sustaining the demurrers the court in effect answered question "A" in the negative, but held the declaration bad because it did not allege notice of injury to the city attorney, as is required by the city charter, and answered question "b" in the affirmative.

If the City of Tampa is not immune from liability for

the damage occasioned by the negligent operation of its incinerator in the manner alleged in each count of the amended declaration upon the theory that the maintenance and operation thereof is a governmental function, then the City is amenable to the same legal rules of liability which would apply to any individual or corporation and the enunciation of this Court in the case of Benedict Pineapple Co. vs. A. C. L. Ry. Co., 55 Fla. 514, 46 Sou. 732, would apply. In that case it was said:

"A declaratoin which states that the defendant railroad company 'so carelessly and negligently managed and operated one of its locomotives * * * that fire escaped therefrom and set fire to the canvas cover or cloth with which a pinery belonging to the plaintiff and situated near to the track of defendant * * * was covered, and burned a large part, to-wit: about one acre of said cover,' and alleges damages in a stated amount, is sufficient to authorize a recovery of general damages or such as necessarily result from the burning of the canvas cover to the extent of its value within the stated amount."

In 43 C. J. 182, the editor said: "In its public character, a municipal corporation is the agent of the state, acting as an arm of the sovereignty of the state created for the convenient administration of the government, exercising to the extent that they have been granted, the governmental functions and powers of the state. It executes the functions and possesses the attributes of sovereignty which have been delegated by the legislative department of government; municipal corporations are primarily created to perform the functions of local self-government; they chiefly administer the local affairs of the territory incorporated. Governmental functions are those conferred or imposed upon the municipality as the local agency of limited and prescribed jurisdiction, to be employed in administering the affairs of the state, and promoting the public welfare generally. While in a certain sense any municipal function might be regarded as gov-

ernmental, when properly applied the term 'governmental functions' should be limited to legal duties imposed by the state, upon its creature, which it may not omit with impunity but must perform at its peril. Governmental functions are served by the police power and power of eminent domain; and also by those maintaining and operating a fire department, those furthering the administration of justice, and such other powers as are to be exercised by the corporation for the public weal, in or for the exercise of which the municipality receives no compensation or particular benefits. Whether the function of caring for and keeping in repair the public highways within the municipality is governmental or municipal has been often mooted and diversely decided''.

And, continuing to define ''municipal functions'' the editor says: ''All functions of a municipal corporation, not governmental, are strictly municipal. Municipal functions are those granted for the specific benefit and advantage of the urban community embraced within the corporated boundaries. Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety, and happiness of the citizens of the municipality, rather than the welfare of the general public. Under this class of functions are included, in most jurisdictions, the proper care of streets and alleys, parks and other public places, and the erection and maintenance of public utilities and improvements generally. In this character the corporation stands for the community in the administration of local affairs wholly beyond the sphere of the public purposes for which its governmental powers are conferred. On the other hand, a municipal corporation in its private or quasi-private capacity enjoys the powers and privileges conferred for its own benefit. In respect of its purely business relations as distinguished from those that are governmental, a municipal corporation is held to the

same standard of just dealing that the law prescribes for private individuals or corporations. Then the municipality acts for the private advantage of the inhabitants of the city and to a certain extent for the city itself. In such case it is not acting in its governmental capacity as sovereign, or in a legislative capacity, but is acting in a proprietary capacity, acting only in a *quasi*-public capacity. It is performing a function not governmental, but often committed to private corporations or persons, with whom it may come into competition. The function may be municipal, but the method may not be. It leads to profit, which is the object of the private corporation.''

It appears that the operation of an incinerator is not an exclusive governmental function, if it may be considered such in any event. The operation of the incinerator is for the specific benefit and advantage of the urban community embraced within the corporate boundaries. It is especially maintained to peculiarly promote the comfort, convenience and welfare of the citizens of the municipality and such benefits are not enjoyed by, nor do the results accomplished affect the general public beyond the corporate limits.

In City of Denver vs. Porter, the Circuit Court of Appeals of the 8th Circuit, reported 126 Fed. 288, it was said:

"The gathering of refuse and waste by a city, and the establishment, maintenance and operation of dumping grounds for its ultimate disposal under the direction of the officers of the city health department, is a duty of local or municipal concern, not performed in the exercise of any governmental function; and hence the city is liable for the negligence of its officers and agents engaged in the performance of such work.''

In that case it was also held:

"Where, in an action to recover damages from fire originating in a dump maintained by defendant city, the court repeatedly charged that the city was not liable unless it omitted the exercise of ordinary care

and diligence in the management of the dump, and instruction defining negligence as the failure to observe for the protection of the interests and property of another person ordinary care, precaution and vigilance was not error, for failure to include the element of duty owing by the city to plaintiff.''

In the case of City of Pass Christian vs. Fernandez, 56 Sou. 329, 39 L. R. A. (N. S.) 649, the Supreme Court of Mississippi held:

"The public or governmental duties of a city are those given by the state to the city as a part of the state's sovereignty, to be exercised by the city for the benefit of the whole public, living both in and out of the corporate limits. All else is private or corporate duty, and for any negligence on the part of the agents or employees of the municipality in the discharge of any of the private duties of the city, the city is liable for all damage just as an individual would be. The use of the cart in hauling dirt or trash for the city is for no governmental purpose, as connected in any way with the sovereign duty of the state. The state does owe the duty to all its citizens of protecting the person from assault and the property from destruction and all done by the city in furtherance of this duty of the state is done in a governmental capacity. But the hauling of dirt and trash is for the use and advantage of the city in its corporate capacity, is a corporate duty, and the city is liable for all damage done by any officer or agent so employed.''

In Missano, et al. vs. Mayor, etc., of City of New York, 54 N. E. 744, the Court of Appeals of New York said:

"The fact that the discharge of the duty of repairing and cleaning the streets of a city might incidentally benefit the public health does not make the acts of the Commissioner of street cleaning a public function, so as to exempt the city from liability for personal injuries caused by employes engaged therein.''

In Roumbos, Administrator, vs. City of Chicago, 332 Ill. 70, 163 N. E. 361, it was held that the cleaning of the city streets is a corporate function under a statute conferring power on a common council to provide for the

cleansing of the streets and the municipality is liable for the negligence of its sweeper who leaves unwatched a fire set to trash swept to the curb with the result that the flame is blown by the wind to a child whose death results from the burns inflicted. The only difference between that case and the one now under consideration is that here the city was using a more modern means and instrumentality to consummate the function involved.

In Astrom vs. City of San Antonio, 62 S. W. 909, the Supreme Court of Texas held that the cleaning of city streets and disposal of such garbage is not the performance of a duty primarily resting on the state, but is the exercise of a corporate power as distinguished from a governmental function for the abuse of which a city is liable.

In the opinion in the above mentioned case the writer cites Lloyd vs. Mayor, 5 N. Y. 375, 55 Am. Dec. 347; Guill vs. Mayor, 55 N. Y. Sup. 889, the case of Massano vs. Mayor, supra; Barney Dumping Boat Co. vs. Mayor, 40 Fed. 50; Engle vs. Mayor, 40 Fed. 51; City of Fort Worth vs. Crawford, 64 Tex. 202, 15 Am. Eng. Ency. of Law 114.

In the case of City of Fort Worth vs. Crawford, supra, it is said:

"In reference to the liability of municipal corporations for creating or failing to remove a nuisance, this distinction is to be observed; If the nuisance grows out of acts done exclusively in the interest of the public, such as the improvement of the sanitary condition of the city, then it would only be liable for a careless or negligent execution of the duty. But if the acts out of which the nuisance originated or is continued were done for the private advantage or emolument of the municipal corporation, then irrespective of the question of negligence, it would be liable for the injuries resulting therefrom. Bailey vs. New York, 3 Hill. 531; Oliver vs. Worcester, 102 Mass. 489; Pittsburgh vs. Grier, 22 Pa. St. 54; Eastman vs. Mere-

dith, 36 N. H. 296; Trustees vs. Gibbs, 11 H. L. Cases, 687.''

The principle involved here was also involved in the case of Kaufman vs. City of Tallahassee, 84 Fla. 634, 94 Sou. 697, and City of Tallahassee vs. Kaufman, 87 Fla. 119, 100 Sou. 150, and in Maxwell vs. City of Miami, 87 Fla. 107, 100 Sou. 147. In Tallahassee vs. Kaufman, supra, it was stated, quoting from Keggin vs. Hillsborough County, 71 Fla. 356, 71 Sou. 372:

> ''A municipality is organized within certain limits of territory for the local advantage and convenience of the people in the particular locality, special or additional advantages or conveniences are thus obtained by such organizations. It is when exercising its functions for its *quasi*-private corporate advantage that a city is held to be liable for its negligence in the discharge of its duties, but a county acts only in a public capacity as an arm or agency of the State.''

In Kaufman vs. City of Tallahassee, 84 Fla. 634, 94 South. 697, this Court speaking through Mr. Justice Ellis, said:

> ''The distinction between what is a governmental and what a ministerial function of a city is not always so clear that a given transaction may at once be classed as the one or the other, but whether governmental or not it is always quite difficult, if not impossible, to give a satisfactory reason for holding a city immune from liability when through its own negligence or the carelessness or inefficiency of its agents and employees it violated a right of a citizen to his injury, especially when one considers that provision of the bill of rights which declares that 'all courts in this State shall be open so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and rights and justice shall be administered without sale, denial or delay'. Constitution, Bill of Rights, Sect. 4.''

We hold, therefore, that a municipality may be held liable for damages occasioned by the negligent operation

of its incinerator, whether it be alleged or not that the matter of operation constituted a public nuisance.

The next question which we are required to determine is whether or not giving notice to the city attorney as required by the city charter was a prerequisite to the right to maintain the action for damage alleged to have been occasioned as the direct result of the negligent operation of the incinerator.

The charter provision is contained in Sec. 59 of Chapter 5363, Acts of 1903, which is as follows:

"No suit shall be maintained against the city for damages arising out of a failure to keep in proper condition any sidewalk, pavement, viaduct, bridge, street or other public place unless it shall be made to appear that the damage alleged is attributable to the negligence of the city and that written notice of such damage was, within thirty days after the receiving of the injury alleged, given to the city attorney with such reasonable specifications as to time and place and witnesses as would enable the city officials to investigate the matter."

This language can by no logical construction be held to include a claim for damages arising out of the alleged negligence or operating a plant such as that here under consideration. If we disregard the rule of *ejusdem generis*, which we cannot do, we should necessarily hold that the words "other public place" did not include nor apply to an incinerator. An incinerator cannot be considered a "public place" in any sense. It is a plant erected and used for a specific and definite purpose by the city through its officers and servants, and is neither intended or designed to be frequented or resorted to by the public.

When the rule of *ejusdem generis* is applied to the statute no stretch of the imagination can bring an incinerator within its purview. The doctrine of *ejusdem generis* as stated by Mr. Justice Strum in the case of Childrens Bootery et al. vs. Sutker, 91 Fla. 60, 107 Sou. 345, is:

"When employed as an aid to statutory construction is that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named."

Judgment entered on demurrer sustained should be reversed. It is so ordered.

Reversed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.