CITY OF MIAMI, a municipal corporation, v. ROSA OATES, a feme sole.

10 So. (2nd) 721                                    June Term, 1942
December 1, 1942                                    En Banc

*J. W. Watson, Jr.,* and *Murrell & Malone,* for appellant.
*Hendricks & Hendricks,* for appellee.

BUFORD, J.:

The City of Miami, being thereunto duly authorized by statute, operates a municipal hospital. The hospital, and its maintenance and operation, is paid for with the proceeds of taxes supplemented by fees for special attention, services and accommodations. The hospital is managed by a board of trustees appointed by the city manager and approved by the city commission. See Chapter 14234, Special Acts of 1929. The trustees select and appoint a general staff composed of practicing physicians and the general staff selects, with the trustees, the superintendent, internes, nurses and other employees. The general staff and the trustees serve without pay but the internes, nurses and other employees are paid

by the City for services rendered. Internes are required to be graduates of a reputable medical college and to hold certificates authorizing them to practice medicine in this State.

Rosa Oates, a citizen and resident of Miami, being afflicted with a diseased colon, in 1939 entered the hospital and had performed a colostomy. Later she had a recurrence of trouble and again entered the hospital for treatment where she on the 4th day of March, 1941, was prepared for a cauterization of the old incision which had become irritated and possibly infected. An interne with the help of attending nurses, prepared Rosa for this operation which was to be done with an electric cautery, which instrument being heated to a high degree by an electrical current, was to be applied to the edges of the incision theretofore made in the left side of the abdomen and through which the colon functioned. In the preparation the interne sterilized the area with surgical alcohol (from 75% to 90% pure). He then saturated gauze and sponge with the alcohol and placed that on Rosa's abdomen around and in close proximity to the place to be cauterized. He then had the cautery connected in the electric socket thereby heating the instrument to a high degree, and attempted to place the hot point on the wound, but when the point approached Rosa's body and the pads saturated with alcohol the pads burst into flame. The burning alcohol ran over the patient's body and she was severely burned, back and front, from her neck to her thighs.

Rosa filed her claim against the City for damages sustained and, when the City declined to respond in damages, she brought this suit, alleging in effect, the facts as above stated.

The City demurred to the declaration on the ground that no cause of action was alleged against the City and on the ground that the City was acting in its governmental capacity in the performance of its duty in caring for the public health. Demurrer was overruled.

The only question presented by the demurrer is, Was the City acting in its governmental capacity or in its corporate capacity?

The defendant then filed pleas to the declaration in which it set up the defense that the City had performed its sole duty when it exercised due care and diligence in the selection of competent and qualified professional physicians to serve in the hospital; that it was not an insurer of the patients who went into the hospital; that the relation of master and servant could not apply for the reason that the City could exercise no control over the manner and method of treating patients in the hospital. These pleas were demurred to and the court sustained the demurrer.

Thereafter the case went to trial on the declaration and the plea of not guilty, which plea served to deny the negligence of the interne, as alleged, and denied that the interne was an employee of the City. On the trial of the case the jury rendered a verdict in favor of plaintiff in the sum of $3500.00 and defendant appealed.

Defendant's counsel at the bar of this Court stated that if plaintiff was entitled to recover the amount of the verdict and judgment was inadequate. But there has been no cross-appeal on this ground.

The first question for our determination is whether or not a municipality, in operating a hospital, acts in its governmental or its municipal corporate capacity. On this question authorities are not in harmony. We think, however, that we must follow the line of reasoning which we have heretofore adopted with reference to such matters beginning with the case of Kaufman v. City of Tallahassee, 84 Fla. 634, 94 Sou. 697, and in Smoak v. City of Tampa, 123 Fla. 716, 167 Sou. 528, wherein we said:

"Generally the governmental or public duties of a municipality for which it can claim exemption from damages for tort have reference to some part or element of the state's sovereignty granted it to be exercised for the benefit of the public whether residing within or without the corporate limits of the city. All other duties are proprietary or corporate and in the performance of them the city is liable for the negligence of its employees. City of Pass Christian v. Fernandez, 100 Miss. 76, 56 Sou. 329, 39 L.R.A. (N.S.) 649.

"The difference between governmental and corporate

duties is sometimes nebulous and difficult to classify but there is certainly nothing connected with garbage disposal that partakes of a public or governmental function. It was consequently one of the proprietary corporate duties for the neglegent performance of which the city may be held liable. City of Tallahassee v. Kaufman, 87 Fla. 119, 100 Sou. 150; Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 135 Sou. 457; City of Pass Christian v. Fernandez, supra."

And in the case of Lewis v. City of Miami, 127 Fla. 426, 173 Sou. 150, we said:

"There was a time when all municipal functions were governmental and therefore municipal corporations were wholly free from responsibility for torts or civil wrongs, by the common law. Jones on Negligence of Municipal Corporations Sec. 18. This rule of municipal non-liability for torts is still recognized as to all functions whereby the municipality acts simply as an agency of the State for governmental purposes, unless, of course, a contrary rule be provided by statute. But as to those corporate powers and responsibilities now residing in municipalities that are outside the narrow range of functions heretofore classed by the common law as purely governmental, municipal liability in an action in tort may exist, especially where the wrong and injury is the result of neglecting a positive duty or inhibition enjoined upon the municipality by law. In Municipal corporations of the present day, jails and work-houses are maintained for the detention of persons not only for the simple offenses that were within the range of municipal action at common law, but for a multitude of other violations that are purely mala prohibita municipala and designed to promote the corporate well being of the city and inhabitants more than to advance the performance of its governmental functions. So even in the keeping of jails and workhouses a municipality may be said to be maintaining an institution for its corporate as well as its governmental purposes, under a modern conception of municipal corporations as partly business and partly governmental institutions. See discussions in Kaufman v. Tallahassee, 84 Fla. 634, 94 Sou. Rep. 697, 30 A.L.R. 471; Maxwell v. Miami, 87 Fla. 107, 100 Sou. Rep. 147, 33 A.L.R. 682."

The maintaining of hospitals for the benefit of the citizenry was not under the common law a function required to be performed by the government, nor a duty which the government would assume to owe to the citizenry. The difference between the operation of an incinerator by a municipality for the protection of the health and welfare of the citizens appears to us to be a difference in the degree of service performed and not of category. In Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 135 So. 457, we held:

"All functions of a municipal corporation, not governmental, are strictly municipal. Municipal functions are those granted for the specific benefit and advantage of the urban community embraced within the corporated boundaries. Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety, and happiness of the citizens of the municipality, rather than the welfare of the general public. Under this class of functions are included, in most jurisdictions, the proper care of streets and alleys, parks and other public places, and the erection and maintenance of public utilities and improvements generally. In this character, the corporation stands for the community, in the administration of local affairs wholly beyond the sphere of the public purposes for which its governmental powers are conferred.

"The operation of an incinerator is not an exclusive governmental function, if it may be considered such in any event. The operation of the incinerator is for the specific benefit and advantage of the urban community embraced within the corporate boundaries. It is especially maintained to peculiarly promote the comfort, convenience and welfare of the citizens of the municipality and such benefits are not enjoyed by, nor do the results accomplished affect the general public beyond the corporate limits.

"A municipality may be held liable for damages occasioned by the negligent operation of its incinerator, whether it be alleged or not that the manner of operation constituted a public nuisance." See also 43 C. J. 183.

The authority of the City of Miami to maintain this Jackson Memorial Hospital is strictly statutory and the

statute does not immunize the corporation from liability for damages occurring by reason of the negligence of its employees, even if it would be competent for the statute to do so. Therefore, we think this hospital falls in the same category as to liability in which a charity hospital would fall and, therefore, the liability for the negligence of its employees is on the same legal basis.

In Nicholson v. Good Samaritan Hospital, 145 Fla. 360, 199 Sou. 344, in an opinion written by our present Chief Justice, after discussing the question at considerable length, we reached the following conclusion:

"We find no sound and satisfying legal principle which, as we view it, forms a just basis for the exemption from liability claimed by the defendant below in the case at bar. We say this with all due respect for the many able courts who have taken a contrary view on the question involved. In this connection we are indebted to counsel for the respective parties for their excellent briefs, in which the authorities, pro and con, are comprehensively reviewed and analyzed.

"While the learned Circuit Judge followed the weight of authority in other jurisdictions, we must, nevertheless, for the reasons above stated, reach a different conclusion."

There can be no question but that a hospital is as much liable under the doctrine of respondeat superior for the negligence of an interne who is in nowise an independent contractor, but a mere employee, as it is for that of a nurse under like employment. That the hospital is answerable in damages for the negligence of a nurse is well settled. See Pensacola Sanitarium v. Wilkins, 68 Fla. 447, 67 So. 124; Parrish v. Clark, 107 Fla. 598, 145 So. 848.

The appellant here relies with apparent confidence on our opinion and judgment in the case of South Fla. R. R. Co. v. Price, 32 Fla. 46, 13 So. 638, and A.C.L. R.R. Co. v. Whitney, 62 Fla. 124, 56 So. 937. In those cases the effort was to hold the Railroad companies liable for the negligence of physicians whom the companies had employed to give medical and surgical care and attention to their employees and to persons injured in the operation of their railroads. The rationale of

those decisions in that physicians were in nowise under the supervision and control of the employer, but stood in the status of independent contractors, and the duty of the employer Railroad Company was only to exercise due care in selecting such employees and we do not think those cases are applicable here. Neither are we at all certain, in the light of modern decisions, that our views expressed in those opinions would be followed in the present day. See Va. Iron Co. v. Odle's Administrator, 128 Va. 280, 105 S.E. 107.

Aside from all this, the negligence complained of in this case was such that it could not be said that the interne was exercising his professional skill and judgment in applying the healing art when he did the thing complained of and which caused the injury. It did not require any knowledge or skill of medicine or surgery for anyone of ordinary intelligence to know that if one saturates a lot of gauze or sponges with a large quantity of high grade alcohol and then brings a red hot iron into close proximity with those saturated materials, they will immediately ignite and burn and when the interne so carelessly and negligently saturated such materials with alcohol and placed them on the naked abdomen of the patient and then brought a red hot cautery into close proximity therewith he was bound to know what the result would be, just the same as one who would drop a lighted match into a gasoline tank might expect to cause an explosion.

The paucity of the judgment is the only thing we find wrong with it, but that is an infirmity which we are not asked to correct.

The judgment is affirmed.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, JJ., concur.