95 So.2d 413 (1957)
NEW AMSTERDAM CASUALTY COMPANY, a Maryland Corporation, Appellant,
v.
Julius N. KNOWLES and Laura D. Knowles, his wife, Appellees.
Supreme Court of Florida, Division A.
May 22, 1957.
A. Frank O'Kelley and Chas. H. Spitz of Keen, O'Kelley & Spitz, Tallahassee, for appellant.
John C. Ausley of Ausley & Ausley, Tallahassee, for appellees.
THOMAS, Justice.
New Amsterdam Casualty Company of Maryland issued to Laura and J.N. Knowles, doing business as Oak Grove Convalescent Home, a liability insurance policy obligating the company to pay on behalf of the insured certain sums for which the policy holder might become liable. In the insurance contract was a provision that no responsibility was assumed by the insurer for claims "resulting from the rendering of any professional services or omission thereof."
We are principally concerned with the construction of the quoted exclusion clause in the light of the facts appearing in the record, but other pertinent conditions of the policy will be stated as we discuss the point of law to be resolved.
The appellees sought a declaratory decree establishing their right to have the appellant provide a defense in an action brought against them by the wife and next friend of William Grimmig, Jr., a mental and physical incompetent, a paralytic, who had been placed in appellees' convalescent home for nursing and care. According *414 to the complaint in that case William Grimmig, Jr. suffered serious injuries by reason of the negligence of an incompetent attendant in the service of the appellees while the attendant was engaged in the performance of his duties.
In the complaint filed in the present suit it was alleged that appellees had no direct knowledge of any defect in the bed occupied by the invalid and knew of no reason why he had fallen from it. From their investigation of the incident they learned that the attendant while "making his early morning rounds" found the bed bars down and the invalid on the floor. The appellees averred that the injury resulted from an accident and that under the policy the insurer was bound to defend them in the suit brought on behalf of William Grimmig, Jr.
By the denial of any responsibility for the defense of the appellees, the clear-cut question whether or not the services being furnished to Grimmig by the appellees were from their nature "professional" is presented.
The chancellor concluded that the appellant was obligated to defend the appellees in the action brought against them and this appeal followed.
When the policy was issued to Oak Grove Nursing Home the insurer should have become aware of the nature of the enterprise in which the appellees were engaged. Under the contract for which, of course, the insurance company was compensated, an obligation arose to defend suits against the policy holder for damages resulting from "bodily injury, sickness, or disease * * *."
It is true that the appellant was privileged by the contract to make investigations in connection with any liability that might be claimed against it, but we do not find provisions in the contract or allegations in the pleading that justify the position, presumably taken after investigation, that what happened to Grimmig in the nursing home resulted from the rendition of professional services, therefore, that the appellant could wash its hands of the whole affair.
It seems to us it would be more logical to expect that in the action against the appellees it might be shown that the injury was one that could happen in a nursing home without any connection with professional services. And if the insurer can under such a policy decide for itself that such an injury as described in the complaint filed against appellees sprang from professional services, we cannot resist the rhetorical questions: "What did the appellant intend to insure when it issued the policy to a nursing home" and "What sort of protection were the appellees to receive for the premium paid?" In other words, if the appellant considered a nursing home a place in which professional services only were furnished, what did it propose to insure? The only person shown by the record to have had any connection with the injury was an attendant.
The language of the declarations in the policy under the title "Premises  Operations" does not strengthen the appellant's position for it simply reads "Sanitariums or Health Institutions Not hospitals or mental-Psychopatic [sic] Institutions."
Furthermore, the appellees were insured against loss from "hazards hereinafter defined." Next, under the heading "Definition of Hazards" appears this language: "Premises  Operations. The ownership, maintenance or use, for the purposes stated in the declarations, of the premises, and all operations which are necessary or incidental to such purposes."
To our mind, the title "convalescent home" does not connote an institution where "professional services" only are rendered, and the word "attendant" *415 does not describe a person who renders them. City of Miami v. Oates, 152 Fla. 21, 10 So.2d 721.
When we undertake to reason that an insurance company may issue a policy to the operator of a "convalescent home," stipulated to be a sanitarium or health institution and not a hospital, and insure for a price, against the loss from hazards incident to the operation, and then arrogate to itself the right of deciding that, after all, an injury with which no one except an attendant seems to have had any connection, resulted from professional services, hence responsibility to defend did not arise, we come full cycle in our thinking. And when we compare the allegations of the complaint filed against the appellees with the terms of the insurance policy, we discover no basis for the presumption that injury arose only from services of professional character. Moreover, the policy must be construed favorably to the holder. Poole v. Travelers Ins. Co., 130 Fla. 806, 179 So. 138.
We have referred to the situation disclosed by the record so far made in the action against appellees for damage to the invalid. If there actually existed a set of facts so different as to relieve the appellant from liability, that would be developed only in an eventual trial. But the appellant could not meanwhile decline any participation in the action. On the contrary it was its duty to defend it. Virginia Surety Company v. Russ, Fla., 86 So.2d 643.
We agree with the circuit judge that the appellant should be required to keep its bargain and defend the suit brought against the appellees.
Affirmed.
TERRELL, C.J., and ROBERTS and THORNAL, JJ., concur.