SHANNON, Judge.
This is an appeal by the plaintiff below from a summary judgment granted the defendant wherein the lower court held in part:
“The sole question here is whether or not the policy of insurance in ques *316 tion covers a claim for attorneys’ fees incurred by J. P. Cochrane, Senior, in defending a suit brought against him for work performed in making an audit for the City of Lake Worth, Florida. The policy of insurance was written in favor of ‘Cochrane & Cochrane, Cer- . tilled Public Accountants, address 200 Peacock Building, Fort Pierce, St. Lucie County, Florida.’ It is shown that Cochrane & Cochrane was a co-partnership composed of J. P. Coch-rane, Senior and J. P. Cochrane, Junior.
“At the time in question, J. P. Cochrane, Senior, maintained an accounting business in an office in West Palm Beach, concerning which the co-partnership was not involved and had no interest. The work performed by J. P. Cochrane, Senior, for the City of Lake Worth was performed in his individual capacity as the owner and operator of the business carried on in the office in West Palm Beach. The suit which was later instituted was brought against him in his individual capacity. He was not sued in his capacity as a co-partner, and the co-partnership doing business at Fort Pierce, Florida was involved in no manner. Under these circumstances, it is the view of the court that the insurance policy in question does not cover the claim for attorneys’ fees, and that defendant is entitled to summary judgment.”
The plaintiff has raised two points of law, but in deciding this case we think that the only real question is whether or not the malpractice insurance policy issued the Fort Pierce partnership of Cochrane & Cochrane should be extended to cover one of the partners in a wholly separate and individual business of accountancy in which he, the partner, was engaged in another city, neither the profits nor the expenses of which business were shared by the - partnership business of Cochrane & Cochrane.
From the facts in the case, about which there is no dispute, it appears that J. P. Cochrane is a certified public accountant and was in partnership with his son, J. P. Cochrane, Jr., with an accounting firm having offices located at Fort Pierce, St. Lucie County, Florida. It was this firm that the defendant had insured under its policy of insurance. J. P. Cochrane, Sr. had another business of accountancy located in West Palm Beach, Palm Beach County, which operated under the name of J. P. Cochrane, C.P.A. Each business maintained its own accounting records and the profits of the business under the name of J. P. Cochrane were not divided with the firm of Cochrane & Cochrane. In 1952 the City of Lake Worth, Palm Beach 'County, employed J. P. Cochrane, C.P.A., to make an audit for that year. All the work was done by the employees in the Palm Beach office of J. P. Cochrane. The Fort Pierce office of Cochrane & Cochrane did not participate in any of the phases of the Lake Worth audit. Thereafter, Lake Worth brought suit against J. P. Cochrane, alleging facts that made the suit one of malpractice. The defendant declined to defend the suit on the grounds that the policy of insurance was for the benefit of Cochrane & Cochrane and not for the business then being operated by J. P. Cochrane.
In the policy of insurance there was contained the following provisions:
“I. Insuring Agreement
“To insure the Insured against direct pecuniary loss and expense arising from any claim made against the Insured during the Policy Period, or within the claim notification period specified in Condition 1, by reason of legal liability for damages caused or alleged to have been caused by the Insured or by any partner, officer or employee of the Insured in the performance of services in his professional capacity as accountant for others prior to the termination of this Policy.
*317 “(a) through neglect, error or omission.
“(h) through dishonesty, misrepresentation or fraud, except if made or committed by the Insured or any partner or officer thereof with affirmative dishonesty or actual intent to deceive or defraud.
“II. Defense
“To defend in behalf of the Insured any suit, even if such suit is groundless, against the Insured alleging:
“(a) such neglect, error or omission
“(b) such dishonesty, misrepresentation or fraud.”
“IV. Individual Partners or Officers
“To extend agreements I and II to apply to individual partners or officers with respect to the performance of the Insured’s services as outlined in Insuring Agreement I.”
The defendant’s position as stated in its brief is that:
“(1) that the policy of insurance is clear and unambiguous and that the named insured under the policy is ‘Cochrane & Cochrane,’ a partnership doing business in Fort Pierce, Florida;
“(2) that for many purposes a partnership is treated as a legal entity in this state;
“(3) that a partnership has an insurable interest in its property, and that it was this interest which the policy of insurance was executed to protect; and
“(4) that the policy of insurance can not be construed to cover the operations of an entirely separate and distinct business.”
While for some purposes a partnership may not be treated as a legal entity it is, for the purposes involved in this suit, treated as such.
In Lott, Inc. v. Padgett, 153 Fla. 308, 14 So.2d 669, 670, our Supreme Court stated:
“We know of no law in this state to aid in answering this question. There is a diversity of opinions elsewhere. Theoretically the partnership assets are vested in the partnership entity. No one partner has the right to possess any of the partnership property to the exclusion of the other partners. The interest of each partner is that undivided portion of the partnership assets which may remain after all partnership debts are paid.”
A partnership, as such, has insurable interest in its property, both real and personal, as stated in Appleman, Insurance Law and Practice, Volume 4, Section 2144, as follows:
“Any association of individuals, whether a partnership or corporation, may own property and contract for insurance thereon in a common name. Thus, real estate acquired with the partnership funds and used in the partnership business gives it an insurable interest therein. Such a policy may be effected in the name of the partnership or the business as carried on by and for the use of one of the partners only.”
In the instant policy, its purpose was to protect the partnership against direct pecuniary loss and expense arising from any claim made against the insured as a consequence of performance by the partnership of its business as professional accountants, including a claim against one of the partners as long as his work was for the partnership which the defendant insured.
*318 When, as here, one of the partners had another business of the same general nature, in which none of the partners advanced any money for expenses, or shared in the profits, and' which business was located at a distant point from the insured partnership, it cannot he said that the defendant undertook to extend its coverage to the partner’s separate business. Such can be readily seen from reading the policy which showed that the insured was “Cochrane & Cochrane, 200 Peacock Building, St. Lucie County, Florida,” and further showed that there were no branch offices. In addition to that, the depositions show that the employees of each office were different and their salaries were paid by the respective businesses for which they worked.
The plaintiff relies on the Florida case of New Amsterdam Casualty Co. v. Knowles, Fla. 1957, 95 So.2d 413, 414, in which it was held by our Supreme Court:
“By the denial of any responsibility for the defense of the appellees, the clear-cut question whether or not the services being furnished to Grimmig by the appellees were from their nature ‘professional’ is presented.”
The decision in the Knowles case, supra, is, as we see it, in no way determinative of the instant case. In the Knowles case the point for determination was what was covered by the policy, whereas in the instant case the question of who was covered was the main issue. The plaintiff takes the position that the policy, being ambiguous and capable of two interpretations, one of which would insure him, the lower court was under a duty to deny the summary judgment against him. This court takes a different view and we hold that the policy is not ambiguous and that the lower court was correct in granting summary judgment.
Affirmed.
KANNER, C. J., and TERRY B. PATTERSON, Associate Judge, concur.